612 A.2d 645

**COMMONWEALTH of Pennsylvania, STATE SYSTEM OF HIGHER EDUCATION, Petitioner,**

v.

**UNITED PLANT GUARD WORKERS OF AMERICA, LOCAL UNION NO. 509, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 16, 1991.

Decided July 9, 1992.

Reargument Denied Aug. 17, 1992.

Petition For Allowance of Appeal Denied Dec. 29, 1992.

Patricia J. Goldband, for petitioner.

James M. Moore, for respondent.

Before DOYLE and PELLEGRINI, JJ., and BARRY, Senior Judge.

PELLEGRINI, Judge.

The Commonwealth of Pennsylvania, State System of Higher Education (SSHE) appeals from an arbitrator's award which sustained a grievance brought by the United Plant Guard Workers of America, Local Union No. 509 (Union), on behalf of campus police officers at Lock Haven University.[1]

In the early 1970's, as part of their job duties, campus police officers regularly jump-started stalled vehicles on campus until the practice was discontinued in 1975 because a state-owned vehicle was damaged while jump-starting another vehicle. After that incident, cables were kept at the campus police office and made available on a sign-out system to students and staff. In 1985, a directive by SSHE reassigned the task of jump-starting vehicles to campus police. The officers orally grieved the assignment of the task at that time, but did not file a written grievance until 1990.

Only in 1989 when student requests increased dramatically did the campus police decide to again grieve the assignment of jump-starting vehicles. On February 26, 1990, the campus police officers, through their Union steward, filed a written grievance contesting SSHE's right to assign them the task of jump-starting vehicles on campus. They alleged that jump-starting student vehicles was a responsibility which fell outside of their job description and subjected them to serious injury.[2] The SSHE denied the grievance because jump-start-

1. This case was reassigned to Judge Pellegrini on May 12, 1992.
2. The campus police officers are assigned to the classifications of Police Officer 1 and 2 whose duties are generally defined as follows:
   Police Officer 1: This is general duty police work in protecting Commonwealth property, facilities and employes.
   Police Officer 2: This is advanced technical police work in protecting Commonwealth property, facilities and employes.

ing vehicles had been a long-settled practice performed by the campus police officers, and that matter had previously been the subject of their oral grievance in 1985.

The Union then submitted the dispute to arbitration pursuant to the collective bargaining agreement between the parties. The arbitrator sustained the grievance, determining that pursuant to Article 27, Section 3 of the collective bargaining agreement, SSHE had the right to assign tasks to campus police officers which were other related duties than those they had specifically been assigned, but the assignment of jump-starting vehicles was not reasonably related to the ordinary tasks of campus police officers. The arbitrator also determined that even though the oral grievance in 1985 was not formalized due to considerations of cost and convenience, the failure to pursue this matter for those reasons was *de minimis* and could not be viewed as acquiescence by the Union that jump-starting vehicles was a proper component of police bargaining unit work. The SSHE then filed this appeal.

■ The standard of review in determining whether an arbitrator's decision is proper is whether the decision draws its essence from the collective bargaining agreement. *Manheim Central Education Association v. Manheim Central School District*, 132 Pa. Commonwealth Ct. 94, 572 A.2d 31 (1990), *petition for allowance of appeal denied*, 525 Pa. 661, 582 A.2d 326 (1990). Regarding the vacating of an arbitrator's decision, we have stated, "[W]e must sustain the arbitrator's award if it is based on anything that can be gleaned as the 'essence' of the bargaining agreement, but this does not include changing the language of the contract or adding new and additional provisions.... [D]ue process does not include adding time provisions which could well have been incorporated in the agreement if they were intended to apply." *American Federation of State, County and Municipal Employees, District Council 84, AFL–CIO v. Beaver Falls*, 74 Pa.Commonwealth Ct. 136, 141, 459 A.2d 863, 865 (1983).

SSHE contends that the arbitrator's decision was erroneous because it did not derive its essence from the collective bargaining agreement between the parties. Specifically,

SSHE asserts that the arbitrator ignored the precise time provisions set forth in the contractual grievance procedure under Article 37, Section 2 of the collective bargaining agreement by allowing the Union to file its grievance after five years instead of the requisite fifteen days. As such, that modification of the time provision was a total disregard for the contract which empowered the arbitrator to resolve the parties' dispute.

Under the collective bargaining agreement between SSHE and the Union, Article 37, Section 2 provides that the Union must first file a grievance with the employee's supervisor, either orally or in writing, within fifteen working days from the date of the occurrence giving rise to the grievance. If the grievance is not settled, an appeal may be presented in writing to the head of the employee's working unit, but must be presented within fifteen days after the supervisor's response is due.

Although the Union steward testified that he presented an oral grievance in 1985 on behalf of the campus police officers following the reinstitution of the jump-start work assignment, the Union did not attempt to pursue the matter until five years later by filing a written grievance in 1990—greatly surpassing the fifteen day limit the union had to respond to the unit supervisor's response from the oral grievance which was filed. Despite being filed five years after the practice became well established, the arbitrator found the untimely filing of the grievance to be a *de minimis* problem. However, the agreement explicitly provided for a fifteen day limit, and the arbitrator's decision to allow the late filing essentially ignored the language limiting the filing of grievances to fifteen days from the date of the occurrence giving rise to the grievance. As such, the decision of the arbitrator did not draw its essence from that agreement.

Nor can the arbitrator somehow "shoehorn" the grievance within the essence of the contract by finding that the Union had a good excuse for not making a timely filing because it did not want to encounter the inconvenience and expense of pursuing the matter to arbitration in 1975. The

purpose of including a grievance procedure in collective bargaining agreements is to have an orderly and timely process to resolve disputes arising under the collective bargaining agreement. To allow five years to pass and still hold the grievance to be timely filed would destroy that process. By negotiating for a grievance procedure, both parties realize that it is inconvenient and sometimes costly, but going through that procedure is less inconvenient and costly than having disputes between the parties remain unsettled. Five years is not *de minimis,* and inconvenience and cost are not an excuse for filing a grievance in an untimely manner.

Accordingly, because the arbitrator's decision does not draw its essence from the collective bargaining agreement, the decision of the arbitrator is reversed.

## ORDER

AND NOW, this 9th day of July, 1992, the decision of the arbitrator, dated February 15, 1991, No. 91–CI–59, is reversed.

BARRY, Senior Judge, Dissenting.

I respectfully dissent from the majority's opinion that the arbitrator's decision in this case failed to derive its "essence" from the bargaining agreement as required by *Manheim Central Education Assoc. v. School District,* 132 Pa.Commonwealth Ct. 94, 572 A.2d 31 (1990).

In the early 1970s campus police regularly jump-started stalled vehicles on campus until the practice was discontinued because a state-owned vehicle was damaged while jump-starting another vehicle. After that incident, cables were kept at the campus police office and made available on a sign-out system to students and staff. In 1985 a management directive once again assigned the task of jump-starting vehicles to campus police. The officers verbally objected to the assignment of the task but, according to the union, minimal time was required to perform this task until 1989 when student requests increased dramatically. The union steward filed a written

grievance on February 26, 1990, contending that jump-starting vehicles was outside the job description of police officers and subjected the officers to serious injury. An arbitrator chosen to resolve the dispute determined that the collective bargaining agreement gave management the right to define job content but the parties anticipated that only related duties would be assigned to bargaining unit positions. The arbitrator also determined that the failure to pursue the initial grievance was *de minimis* and could not be construed as acceptance by campus police of jump starting vehicles as bargaining unit work. The arbitrator sustained the grievance because the task of jump-starting vehicles was not reasonably related to the "essential function of police officers." (Arbitrator's Award, 2/15/91, p. 11.) The employer filed an immediate appeal.

The linchpin of the majority opinion is that the arbitrator ignored the time provisions of the grievance procedure by allowing the union to file the grievance five years after the task was assigned. Article 37, Section 2 provides that an employee "shall present the grievance orally or in writing to the employe's immediate supervisor within 15 working days of the date of its occurrence, or when the employe knew or by reasonable diligence should have known of its occurrence." The arbitrator's decision dealt with the timeliness issue in light of the relevant contract terms. The courts have held that under the "essence" test "an arbitrator's award is to be respected by the courts if it represents a reasonable interpretation of the labor agreement between the parties." *County of Centre v. Musser,* 519 Pa. 380, 390, 548 A.2d 1194, 1198 (1988). Thus the question is one of reasonability, not whether the arbitrator's interpretation is the correct one, nor whether we would have reached the same result. Moreover, we have held that timeliness is a procedural question and that if the subject matter of a dispute is arbitrable and the collective bargaining agreement does not prohibit the arbitrator from deciding procedural issues, the arbitrator's decision is final. *School District of City of Duquesne v. Duquesne Education Assoc.,* 475 Pa. 279, 380 A.2d 353 (1977); *Upper Bucks County*

*Area Vocational–Technical School Joint Committee v. Upper Bucks County Vocational–Technical School Education Assoc.,* 91 Pa.Commonwealth Ct. 463, 497 A.2d 943 (1985). Nothing in Article 37, or any other section of the collective bargaining agreement, prevents the arbitrator from deciding procedural issues. The parties bargained for the arbitrator's interpretation of the collective bargaining agreement and we can find no basis to set aside the arbitrator's determination that, considering the context in which this dispute arose, the failure to file a grievance at an earlier time could be seen as an acceptance of the practice by the union. (Arbitrator's award, 2/15/91, p. 11.)

Finally, in *Philadelphia Housing Authority v. Union of Security Officers # 1,* 500 Pa. 213, 455 A.2d 625 (1983) and *Musser,* arbitrator's decisions were reversed because of the outrageous conduct of the employees involved. I do not believe that delay in filing a grievance qualifies as outrageous conduct. A benefit of arbitration is the finality of the decision; this finality may be lost if we expand our scope of review to examine the arbitrator's decision for all possible errors.