**COMMONWEALTH of Pennsylvania, DEPARTMENT OF CORRECTIONS, STATE CORRECTIONAL INSTITUTION AT PITTSBURGH, Petitioner**

v.

**PENNSYLVANIA STATE CORRECTIONS OFFICERS ASSOCIATION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2012.
Decided Oct. 10, 2012.

---

**62**

Jonathan W. Kunkel, Assistant Counsel, Mechanicsburg, for petitioner.

Christopher J. Cimballa, Pittsburgh, for respondent.

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY Judge COVEY.

The Commonwealth of Pennsylvania, Department of Corrections (Department), State Correctional Institution at Pittsburgh (SCI–Pittsburgh) petitions for review of the February 29, 2012 grievance arbitration award (Award) reinstating corrections officers Harry Nicoletti, Kevin Friess, Tory Kelly, Jerome Lynch, Brian Olinger, Sean Storey, Kevin Johnson, and John Michaels (collectively, Grievants), and awarding them lost pay and benefits. The issues before this Court are: (1) whether the determination that the grievances were timely filed was rationally derived from the collective bargaining agreement (CBA); and, (2) whether the Award violates the well-defined, dominant public policy to ensure that inmates are free from staff abuse. We reverse.

The Pennsylvania State Corrections Officers Association (PSCOA) is the exclusive collective bargaining representative of Pennsylvania state corrections officers pursuant to the Public Employe Relations Act (Act 195).[1] Grievants are state corrections officers employed at SCI–Pittsburgh. Due to corroborated allegations of mistreatment of inmates temporarily housed in the reception unit (F–Block) at SCI–Pittsburgh, on January 5, 2011, Grievant Nicoletti was verbally suspended from his job pending investigation. A January 10, 2011 letter from then SCI–Pittsburgh Superintendent Melvin S. Lockett confirmed Nicoletti's verbal suspension. On February 7, 2011, PSCOA filed a grievance report on Nicoletti's behalf, alleging that he was disciplined in violation of the CBA.

On April 1, 2011, Grievants Friess, Kelly, Lynch, Olinger, Storey, Johnson and Michaels were verbally suspended from their jobs at SCI–Pittsburgh pending investigation. April 1, 2011 letters from Superintendent Lockett confirmed their verbal suspensions. On June 27, 2011, the PSCOA filed grievance reports on their behalf alleging that they were disciplined in violation of the CBA.

By agreement of the parties, a bifurcated and expedited arbitration hearing was held before Ronald F. Talarico (Arbitrator) on October 28, 2011 as to, *inter alia*, whether the eight grievances were timely filed. On February 29, 2012, the Arbitrator issued the Award, stating that the grievances were timely filed and were, therefore, arbitrable. The Department

1. Act of July 23, 1970, P.L.563, *as amended*, 43 P.S. §§ 1101.101–1101.2301.

appealed to this Court.[2]

The Department argues that the Arbitrator's determination that the grievances were timely filed was not rationally derived from the CBA. We agree. At the time of the suspensions, the Grievants were subject to a CBA between the Commonwealth and the PSCOA, effective July 1, 2008 to June 30, 2011. Article 26, Section 1 of the CBA, proscribes that the Department "shall not . . . suspend . . . an employee without just cause," and "[a]n employee may appeal a . . . suspension . . . beginning at the first step of the grievance procedure, subject to any conditions set forth in . . . Article 35. . . . ." Reproduced Record (R.R.) at 56a.

Article 35 (Grievances and Arbitration), Section 1 of the CBA authorizes an employee to challenge disciplinary actions either pursuant to the CBA's grievance procedures, or through the Pennsylvania Civil Service Commission. Article 35, Section 2 of the CBA provides that an employee, alone or by the PSCOA, "**shall** present the grievance in writing to the respective institution . . . **within fifteen (15) working days of the date of the occurrence giving rise to the dispute,** or when the employee knew or by reasonable diligence should have known of the occurrence." (Emphasis added). R.R. at 74a, 208a.

██ The CBA makes clear that suspensions may be grieved in writing within 15 working days of the suspension. Here, the parties stipulated that Nicoletti was verbally suspended on January 5, 2011, which was confirmed by letter dated January 10, 2011, yet his grievance was not filed until February 7, 2011, 28 working days after the letter was issued. It was also stipulated that Friess, Kelly, Lynch, Olinger, Storey, Johnson and Michaels were verbally suspended on April 1, 2011, and their confirmation letters were issued the same day, yet their grievances were not filed until June 27, 2011, 87 working days after the letters were issued. There is no indication in the record as to why the grievances were not filed within 15 working days.[3] Applying these facts to a strict reading of the CBA, Grievants' appeals were untimely, and should have been dismissed by the Arbitrator.

██ Instead, the Arbitrator held that continuing violations of the CBA give rise to continuing grievances and, under such circumstances, a delay in filing will do nothing more than limit the remedy, while the grievances remain viable. The Arbitrator concluded that "[t]ypically, suspensions are of a finite duration" and, despite that the CBA does not appear to limit suspension periods, he concluded that there is "no better example of what constitutes a 'continuing' violation than . . . [a suspension] for an indeterminate period of time . . . ." Department Br.App. A at 15–16. Having determined that each suspended day gives rise to a new occurrence, he held that all of the grievances in this case were timely filed. The Arbitrator did not cite specifically to any provision in the CBA to support his conclusion.[4]

██ We recognize that

---

**2.** "[T]he role for a court reviewing a challenge to a[n] . . . arbitration award under Act 195 is one of deference. . . . The arbitrator's award must draw its essence from the collective bargaining agreement." *State Sys. of Higher Educ. (Cheyney Univ.) v. State Coll. Univ. Prof'l Ass'n (PSEA–NEA),* 560 Pa. 135, 149–50, 743 A.2d 405, 413 (1999).

**3.** Although the PSCOA argued to this Court en banc that the written suspension confirmations were insufficiently specific, this issue was not raised before the Arbitrator and will not now be considered by this Court.

**4.** The only support the Arbitrator proffered for his conclusion was a distinguishable case of a grievance arbitration award issued in

a reviewing court owes great deference to an arbitration award. Under what is known as the 'essence test,' the award must be upheld if: (1) the issue as properly defined is within the terms of the collective bargaining agreement; and (2) the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. An arbitrator's award will be vacated only if it 'indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.' The test is not whether the reviewing court agrees with the arbitrator's interpretation of the collective bargaining agreement but whether the arbitrator's interpretation and application of the agreement can be reconciled with the language of the agreement.

*Dep't of Corr. v. Pennsylvania State Corr. Officers Ass'n*, 38 A.3d 975, 980 (Pa. Cmwlth.2011) (citations omitted). "[W]e must sustain the arbitrator's award if it is based on anything that can be gleaned as the 'essence' of the bargaining agreement, but this does not include changing the language of the contract or adding new and additional provisions." *Am. Fed'n of State, Cnty. & Mun. Emps., Dist. Council 84, AFL–CIO v. City of Beaver Falls*, 74 Pa.Cmwlth. 136, 141, 459 A.2d 863, 865 (1983). "Where the arbitrator's words exhibit an infidelity to the agreement, courts have no choice but to refuse enforcement of the award." *S. Tioga Educ. Ass'n v. S. Tioga Sch. Dist.*, 668 A.2d 260, 262 (Pa. Cmwlth.1995) (quoting *Riverview Sch. Dist. v. Riverview Educ. Ass'n, PSEA–NEA*, 162 Pa.Cmwlth. 644, 650, 639 A.2d 974, 977 (1994)). An arbitrator may not add time provisions that could have been, but were not included in the CBA when it

1987 relative to college employees' termination of employment.

was drafted. *State Sys. of Higher Educ. v. United Plant Guard Workers of Am., Local Union No. 509*, 149 Pa.Cmwlth. 193, 612 A.2d 645 (1992). This Court has specifically held that where, as here,

> the agreement explicitly provided for a fifteen day limit, and the arbitrator's decision to allow the late filing essentially ignored the language limiting the filing of grievances to fifteen days from the date of the occurrence giving rise to the grievance[,] . . . the decision of the arbitrator did not draw its essence from that agreement.

*Id.* at 195, 612 A.2d at 647.

The Arbitrator's conclusion that the grievances were timely is without foundation in, fails to logically flow from, and cannot be reconciled with the clear language of the CBA. Because the Arbitrator's Award does not draw its essence from the CBA, it is reversed.[5]

### ORDER

AND NOW, this 10th day of October, 2012, the February 29, 2012 grievance arbitration award is reversed.

**5.** In light of this holding, we need not address the issue of whether the Award violates public policy.