# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amalgamated Transit Union Local 85,   :
                   Appellant   :
                                :
        v.                    :   No. 2323 C.D. 2014
                                :   Argued: April 12, 2016
Port Authority of Allegheny County   :


**BEFORE:  HONORABLE P. KEVIN BROBSON, Judge**
                **HONORABLE ANNE E. COVEY, Judge**
                **HONORABLE JAMES GARDNER COLINS, Senior Judge**


*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                **FILED: May 24, 2016**


       Amalgamated Transit Union, Local 85 (Union), appeals from an order of the Court of Common Pleas of Allegheny County (trial court), which denied the Union's petition to vacate an arbitration award. The arbitration award denied the Union's grievance concerning the Port Authority of Allegheny County's (Port Authority) revision of its performance code governing employee absenteeism. We now reverse the trial court's order to the extent that it affirmed the arbitration panel's disposition of the merits of the grievance.

       The Union and the Port Authority are parties to a Collective Bargaining Agreement (CBA). On November 25, 2008, the parties executed a new CBA for 2008 through 2012, which amended some of the terms of the CBA in

effect prior to 2008. (Reproduced Record (R.R.) at 15-17.)[1] One of the new terms of the parties' CBA required the parties to "establish a committee to discuss and deal with any excessive absenteeism and methods to rectify the same." (*Id.* at 16.) On July 1, 2011, the Port Authority, without the Union's agreement, revised a portion of its employee performance code concerning the penalties for absenteeism. The Union filed a grievance on September 21, 2011, alleging that the Port Authority violated the parties' CBA by revising its performance code. (*Id.* at 18.) The Port Authority denied the Union's grievance, and the Union requested arbitration to resolve the parties' dispute. (*Id.* at 19.)

The matter proceeded to arbitration, and an arbitration panel comprised of a partisan arbitrator for the Port Authority, a partisan arbitrator for the Union, and a neutral arbitrator conducted a hearing. The parties presented evidence in support of their opposing positions concerning the Port Authority's right to revise the performance code without the Union's agreement. The Port Authority also contended, in the alternative, that the matter was not arbitrable, because the Union's grievance was not filed within thirty days of the Port Authority's revision of the performance code as required by Section 106(A)(2) of the CBA. (*Id.* at 29, 72.) The Port Authority thus contended that the Union's grievance should be denied as untimely or, alternatively, that the grievance should be denied on the merits. (*Id.* at 36.)

The neutral arbitrator, considering both the procedural and substantive issues raised by the parties, issued a draft opinion and award denying the Union's

---

[1] The agreement provided that the terms of the parties' previous CBA "not specifically changed [in the November 25, 2008 agreement] shall remain as is." (R.R. at 17.)

2

grievance. In so doing, the neutral arbitrator concluded that despite the language of the parties' November 25, 2008 amendment to the CBA, the role of the absenteeism committee was intended to be advisory and, therefore, the Port Authority did not violate the CBA by revising its performance code. (*Id*. at 76-77.) The arbitrator further concluded that the Union's grievance was untimely filed:

> Regarding the question of timeliness raised by the Port Authority, the record evidence shows that the revisions to the performance code occurred on July 1, 2011. It is also clear that a grievance was not filed until September 21, 2011. Section 106, Section A.2 [of the CBA] provides that grievances are to be filed within 30 calendar days from occurrence of the incident. Obviously, the grievance was filed beyond the required 30 calendar day period. In this case the evidence has shown that there may have [been] some discussion between [a Union representative] and a Port Authority representative, but such discussion has not been shown to have resulted in any kind of agreement for an extension of time to file a grievance. While I recognize there may be instances where the parties do in fact extend grievance filing time limits, there is no such evidence to support such a finding in this case. Consequently, it is my determination the grievance was untimely filed.

(*Id.* at 77.) The arbitrator thus addressed both the merits of the grievance and the procedural issue.

After the draft opinion was issued, the Union requested an executive session. The Union objected to the neutral arbitrator's opinion on the basis that the arbitrator's conclusion that the Union's grievance was untimely filed deprived the arbitrator of jurisdiction to address the merits of the dispute. The neutral arbitrator declined to revise the draft opinion so as to eliminate the portion of the opinion deciding the merits. On September 30, 2013, the Port Authority's partisan arbitrator signed the award, indicating his acceptance of the neutral arbitrator's

opinion and award. (*Id.* at 79.) The Union's arbitrator did not sign the award. (*Id.*)

The Union filed a petition to vacate the arbitration award with the trial court on October 30, 2013. In its petition, the Union argued that the merits portion of the arbitration award should be vacated, because the arbitration panel, having found that the Union's grievance was untimely, issued an arbitration award that did not draw its essence from the CBA. The Port Authority opposed the Union's arguments as to the merits portion of the arbitration award, explaining that the arbitration panel properly addressed both of the issues before it. The Port Authority also argued that pursuant to the terms of the CBA, the failure of the Union's arbitrator to sign the award constituted a deemed acceptance of the award, thereby barring the Union from requesting that the award be vacated. Upon consideration of the parties' briefs, the trial court issued an opinion and order, denying the Union's petition to vacate the arbitration award. The trial court, applying the essence test, explained that "[t]he decision by the Arbitrator dealt with a subject that was clearly within the scope of the [CBA]. The Union proceeded with the evidentiary hearing and never asked to bifurcate the procedural from the substantive issues." (Trial Ct. Op. at 2.) The trial court did not address the Port Authority's argument as to the Union's ability to request that the trial court vacate the award.

On appeal to this Court,[2] the Union argues that the trial court erred in concluding that the arbitration award drew its essence from the parties' CBA.

---

[2] The proper standard of review for an appeal of an arbitration award arising under the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. **(Footnote continued on next page…)**

Specifically, the Union contends that the merits portion of the arbitration award has no foundation in the terms of the CBA, because the arbitration panel found that the grievance was untimely filed. The Port Authority counters that the Union waived that issue and was barred from appealing this matter to the trial court due to the failure of the Union arbitrator to sign the award.

We first address the Union's argument that the trial court erred in concluding that the arbitration award drew its essence from the CBA. Because the arbitration panel found that the grievance was untimely, the Union maintains that the arbitration panel's holding as to the merits is not within the terms of the CBA, nor can it be rationally derived from the CBA. The Union requests that we vacate the arbitration panel's ruling on the merits. The Port Authority counters that the Union did not request bifurcation, and, consequently, the arbitration panel properly addressed both the procedural and substantive issues raised by the parties. Further, the Port Authority argues that the issues presented to the arbitration panel— namely, the timely filing of grievances and the Port Authority's right to revise the performance code—are both issues that are governed by the CBA, and, therefore, the arbitration award derives its essence from the CBA. Finally, the Port Authority argues that the Union should be precluded from arguing before this Court that the arbitration panel could not address the merits of the grievance after finding the grievance untimely, as the Union did not raise the issue before the arbitration panel.

---

**(continued…)**

§§ 1101.101-.2301, is the essence test. *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educ. Support Pers. Ass'n*, 939 A.2d 855, 863 (Pa. 2007) (*Westmoreland I.U. # 7*).

We agree with the Union that the merits portion of the arbitration award does not satisfy the essence test, because the arbitration panel found that the grievance was untimely filed. An arbitration panel's award satisfies the essence test if it "draw[s] its essence from the collective bargaining agreement." *State Sys. of Higher Educ. (Cheyney Univ.) v. State Coll. Univ. Prof'l Ass'n (PSEA-NEA)*, 743 A.2d 405, 413 (Pa. 1999). A court reviewing an arbitration panel's award under the essence test must conduct a two-prong analysis:

> First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.

*Id.* "Where the arbitrator's words exhibit an infidelity to the agreement, courts have no choice but to refuse enforcement of the award." *S. Tioga Educ. Ass'n v. S. Tioga Sch. Dist.*, 668 A.2d 260, 262 (Pa. Cmwlth. 1995) (quoting *Riverview Sch. Dist. v. Riverview Educ. Ass'n, PSEA-NEA*, 639 A.2d 974, 977 (Pa. Cmwlth. 1994)), *appeal denied*, 676 A.2d 1203 (Pa. 1996).

Section 106(A)(2) of the CBA provides that "[a]ll grievances with the exception of claims for welfare *must be filed within thirty (30) calendar days* from occurrence of incident or issuance of discipline." (R.R. at 12 (emphasis added).) Here, the arbitration panel found that the grievance was filed beyond this thirty day deadline, and neither party appealed the arbitration panel's finding as to the untimely filing of the grievance. Because the arbitration panel found that the

6

grievance was untimely, the merits portion of the arbitration award does not derive its essence from the terms of the CBA. Specifically, the bargained-for terms of the parties' CBA allow for an arbitration panel to consider the merits of grievances that are filed within thirty days of an incident. Despite the Port Authority's contention that the merits of the grievance are within the terms of the CBA, there is no provision in the CBA allowing an arbitration panel to resolve the merits of grievances filed beyond thirty days.[3,4] Where an arbitration panel has found a grievance untimely, no adjudication as to the merits of the grievance can logically flow from a CBA that expressly requires timely filing of grievances. *See State Sys. of Higher Educ. v. United Plant Guard Workers of Am., Local Union No.* 509, 612 A.2d 645, 647-48 (Pa. Cmwlth.) (reversing arbitration award which resolved merits where arbitrator's finding that grievance was timely did not draw its essence from CBA), *appeal denied*, 618 A.2d 403 (Pa. 1992). Because the merits portion of the arbitration award cannot logically flow from the CBA due to the arbitration panel's disposition as to timeliness, the arbitration award does not satisfy the essence test. Accordingly, the trial court's order is reversed to the extent that it

---

[3] Regarding the Port Authority's additional argument concerning bifurcation, it is of no moment that the Union failed to request bifurcation of the procedural and substantive issues. The Union's failure to request bifurcation did not grant the arbitration panel any more authority than it already had to resolve the merits of an untimely grievance. As explained above, the arbitration panel's resolution of the merits was not within the terms of the CBA. Although bifurcation may have prevented this outcome, it was not incumbent upon the Union to request it. We, therefore, reject this argument.

[4] We recognize that in resolving the merits, the arbitration panel may have acted out of caution. Specifically, if the arbitration panel's conclusion as to timeliness were overturned on appeal, the merits decision could be considered. Where, as here, the ruling on timeliness prevails, the arbitration panel's discussion of the merits is, at best, an advisory opinion and cannot serve as a binding interpretation of the CBA.

7

affirmed the arbitration panel's disposition of the merits of the grievance, and the matter is remanded to the trial court with instruction that it vacate the merits portion of the arbitration award.

We further reject the Port Authority's argument that the Union failed to preserve the issue of the arbitration panel's ability to address the merits of the grievance after finding the grievance untimely. The Union raised a substantive issue before the arbitration panel, the Port Authority challenged the substantive issue and raised a question as to the timeliness of the Union's grievance, and the arbitration panel ruled in the Port Authority's favor on both issues. By challenging the timeliness of the grievance, the Port Authority thus raised a question concerning the arbitration panel's ability to resolve the merits of the dispute if it found the grievance to be untimely.[5] Now, the Port Authority seeks to preserve the entirety of the favorable award by arguing that the Union failed to raise this issue before the arbitration panel. Generally, a party must raise an issue at the earliest opportunity. *Campbell v. Dep't of Transp., Bureau of Driver Licensing*, 86 A.3d 344, 349 (Pa. Cmwlth. 2014). Here, it was not until the arbitration panel ruled on both the merits and the timeliness of the grievance that the Union could have raised the issue as to whether the arbitration panel could address the merits *after* finding the grievance untimely. The Union objected to the arbitration panel's resolution of

---

[5] We note that before the arbitration panel, the Port Authority contended that "[t]he arbitrator must deny this grievance as untimely. *Even if the arbitrator could decide this grievance on the merits,* it should still be denied." (R.R. at 36 (emphasis added).) The Port Authority did not ask the arbitration panel to address both issues. Rather, the Port Authority requested that the arbitration panel deny the grievance as untimely. If, however, the arbitration panel were to find the grievance timely, the Port Authority sought for the grievance to be denied on the merits.

8

the merits during the executive session, and, before the trial court, the Union challenged the arbitration panel's jurisdiction to consider the merits of the grievance in the face of an untimely request for arbitration. The Union thus raised the issue at the earliest possible opportunity. We, therefore, reject the Port Authority's argument that the Union failed to preserve the issue of the arbitration panel's ability to address the merits of the grievance after finding the grievance untimely.[6]

Last, we address the Port Authority's contention that the trial court erred because the Union is barred from appealing this matter due to the failure of the Union arbitrator to sign the award. Specifically, the Port Authority argues that the language of Section 106(F) of the CBA[7] indicates that a party who fails to sign

---

[6] The Port Authority further contends that allowing the Union to prevail on this issue would essentially permit the Union to repeatedly file untimely grievances as a method by which the Union could fully litigate the procedural and substantive issues of a dispute and then seek to have unfavorable awards vacated "on the basis of some latent procedural issue." (Port Authority Br. at 18-19.) It is not for this Court, however, to divine the Union's intent in pursuing this particular litigation strategy in the future. We note that the disposition of *this matter* will not result in a different outcome for the Union as to the denial of its grievance. Even if the merits portion of the arbitration panel's award is vacated, the Union has not appealed the arbitration panel's ruling as to timeliness and, consequently, the grievance remains denied as untimely. We, therefore, reject the Port Authority's argument.

[7] Section 106(F) of the CBA provides:

> Upon issuance of the neutral arbitrator's decision to the party arbitrators, the parties shall have fifteen (15) business days to request an executive session. The parties shall have fifteen (15) business days after the conclusion of the executive session, if one is requested, or if no executive session is requested, thirty (30) calendar days from the date of issuance from the neutral arbitrator, to sign the award indicating either concurrence or dissent. The failure to sign the award in accordance with this section shall constitute that party's concurrence in the neutral's decision.

**(Footnote continued on next page…)**

9

an award is deemed to have concurred in the award. The Port Authority contends that as a consequence of the Union's concurrence in the award, the Union may not now appeal.

We interpret the Port Authority's argument as a contention that the Union violated the CBA by appealing the arbitration panel's award when, by operation of Section 106(F) of the CBA, it was precluded from appealing. Whether a party has violated the CBA, however, is a question that must first be addressed through the grievance process. The proper procedure here, therefore, was for the Port Authority to raise the issue before the trial court, file a grievance concerning the Union's right to appeal the arbitration panel's award, and seek a stay of the proceedings before the trial court pending resolution of the grievance. If, after the parties have had the opportunity to fully grieve the issue pursuant to the terms of the CBA, a dispute continues to exist between the parties as to the interpretation of Section 106(F) of the CBA, Section 903 of the Public Employe Relations Act (PERA) mandates that such a dispute be submitted to an arbitration panel for resolution.[8] Only after a dispute has reached this stage is it appropriate for a party to seek judicial review of the issues addressed during the grievance and arbitration process. *See Campbell v. Dep't of Labor and Indus., Office of Emp't Sec.*, 471 A.2d 1331, 1334 (Pa. Cmwlth. 1984) ("[Petitioner's] grievance . . . must

**(continued…)**

(R.R. at 13.)

[8] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.903 ("Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory."); *see also* Section 106(E) of the CBA ("Should any dispute arise between the parties concerning the interpretation or application of any section . . . in this [CBA] . . ., the matter shall be submitted to a board of arbitration for decision.").

10

be submitted to arbitration before petitioner may seek judicial redress; and since he has not yet exhausted that mandatory remedy, this Court has no jurisdiction over the instant action.") Here, rather than following the procedure outlined above, the Port Authority improperly sought to have the trial court resolve the issue concerning Section 106(F) of the CBA.[9] Neither this Court nor the trial court, however, may resolve disputes as to issues that have not first been grieved and arbitrated pursuant to the terms of the parties' CBA. *See* Section 903 of PERA; *Campbell*, 471 A.2d at 1334; Section 106(E) of the CBA; *see also Shumake v. Phila. Bd. of Educ.*, 686 A.2d 22, 24 (Pa. Super. 1996) (explaining that common pleas courts do not have jurisdiction over disputes concerning interpretation of CBA until party exhausts remedies under CBA). We, therefore, reject the Port Authority's argument concerning Section 106(F) of the CBA, as the issue concerning the Union's right to appeal is not properly before this Court.

Accordingly, the trial court's order is reversed to the extent that it affirmed the arbitration panel's disposition of the merits of the grievance, and the matter is remanded to the trial court with instruction that it vacate the merits portion of the arbitration award.

_____
P. KEVIN BROBSON, Judge

---

[9] We note that at this stage in the proceedings, the Port Authority likely would be unable to prevail on a grievance concerning the Union's ability to appeal in the instant matter. As explained above, Section 106(A)(2) of the CBA requires the parties to file grievances within thirty days of the incident at issue. Here, the Union filed its petition to vacate the arbitration award on October 30, 2013. The Port Authority would have had to file a grievance within thirty days of this date for the grievance to be timely.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amalgamated Transit Union Local 85,   :
                   Appellant   :
                             :

         v.              :    No. 2323 C.D. 2014
                             :

Port Authority of Allegheny County   :

## O R D E R

AND NOW, this 24th day of May, 2016, the order of the Court of Common Pleas of Allegheny County (trial court) is hereby REVERSED to the extent that it affirmed the arbitration panel's disposition of the merits of the grievance filed by Amalgamated Transit Union Local 85, and the matter is REMANDED to the trial court with instruction that it vacate the merits portion of the arbitration award.

Jurisdiction relinquished.

 

—————————————————————
P. KEVIN BROBSON, Judge