IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Allegheny, Pennsylvania,  :
               Appellant  :
                             :
             v.  :  No. 744 C.D. 2016
                             :  ARGUED:  April 6, 2017
Allegheny County Prison  :
Employees Independent Union  :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE JULIA K. HEARTHWAY, Judge
                 HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE HEARTHWAY              FILED:  July 13, 2017

        The County of Allegheny (County) appeals from the March 28, 2016, order of the Court of Common Pleas of Allegheny County (trial court), which denied the County's Petition to Vacate Arbitration Award and affirmed the arbitrator's award in all respects.  Relevant here is that portion of the arbitrator's award stating that the County cannot award Samuel Pastore (Pastore) work schedules or pass days that have been denied to more senior members of the bargaining unit.  We affirm.

        The County and the Allegheny County Prison Employees Independent Union (Union) are parties to a collective bargaining agreement (CBA).  (Arbitrator's opinion (Arb. op.) at 3.)  Pastore has been employed as a Corrections Officer with the County since 1995.  In 2007, Pastore suffered a work-related

injury, and as a result, the County provided him with a light duty position as a security camera monitor and, subsequently, with a light duty position in Internal Affairs. Pastore was designated as a "Floater," and he subsequently bid on and was granted an ongoing Monday to Friday 7:00 a.m. to 3:00 p.m. shift with Saturday/Sunday as his pass days, or days off. (*See* Arb. op. at 3.)

Article XXVIII of the CBA sets forth the bidding process. Floaters may be assigned to work anywhere in the jail. Floaters express a preference (by listing three choices) for a particular shift and pass days but are not guaranteed to receive them. Seniority governs the shifts and pass days awarded to Floaters.[1] (Arb. op. at 1-2, quoting Arbitrator W. Timothy Barry 1/13/14 op.; *see* CBA, Art. XXVIII.)

---

[1] Article XXVIII sets forth the bidding process. First are "bid jobs" which are identified in the CBA. The officers bid on a particular job and each job has a particular shift and designated pass days. A list of bid jobs is posted monthly and each job is awarded based on seniority. Second are "level bids" in which officers bid to work jobs on a particular level of the jail. Each carries a particular shift and pass days and are also awarded based on seniority. Third are "bid days" in which officers bid on shifts and pass days but otherwise float throughout the jail to different assignments. Fourth are Floaters in which officers express a preference for a particular shift and pass days but are not guaranteed to have it. On the work schedule, a Floater's seniority number is listed, followed by his or her shift preference, and pass day preference. The officer lists his or her name, then a first, second and third choice. Shifts and pass days are awarded based on seniority. Fifth are "letter bids" which are specific assignments not awarded by seniority because they require special skills. The positions are identified in the CBA and officers submit resumes and apply for the positions. (Arb. op. at 1-2, quoting Arbitrator W. Timothy Barry 1/13/14 op.; *see* CBA, Art. XXVIII.)

Before the Arbitrator, the County argued that the bidding process was merely a statement of preference. The Arbitrator rejected that argument, and the County does not renew that argument before this Court.

On March 9, 2014, the Union filed a grievance alleging a violation of Article XXX (concerning light duty) and requested that Pastore be removed from Internal Affairs and be assigned pass days by seniority.[2] (Reproduced Record (R.R.) at 183.)[3] Ultimately, the case was assigned to arbitrator Mark McCloskey (Arbitrator), and an arbitration hearing was held, at which both parties presented evidence.

Before the Arbitrator, the parties raised multiple arguments. Only those relevant to the issues raised before us will be recounted. The Union argued that the issue concerning the assignment of work schedules and pass days was a matter of seniority. The Union maintained that Pastore's light duty status did not entitle him to bypass the bidding process and that no other light duty designated personnel have received such preferential treatment. The County, on the other hand, asserted that the creation and implementation of light duty is a managerial prerogative, and therefore is not subject to the grievance procedure. The County also argued that the grievance was not filed in a timely manner because Pastore's pass day schedule was modified in 2007, and the grievance was not filed until seven years later.

On February 2, 2015, the Arbitrator issued his opinion and award (Award) sustaining the grievance, and stated that the County cannot award Pastore

---

[2] The grievance also requested that Pastore not be given free parking; however, that issue is not before us.

[3] The County did not number the pages in the Reproduced Record in the manner required by Pa. R.A.P. 2173, which requires the page numbers to be followed by a small "a." We will cite to them as the County does to avoid confusion.

3

work schedules or pass days that have been denied to more senior members of the bargaining unit. The Arbitrator acknowledged that the County has a right to create and implement a light duty program as a managerial prerogative, but stated that right was not being challenged by the Union and was not at issue. The Arbitrator found that Pastore was designated as a Floater and that the County granted him a Monday through Friday, 7:00 a.m. to 3:00 p.m. work schedule with Saturday/Sunday pass days. (*See* Arb. op. at 8.) The Arbitrator found that light duty assignments are possible regardless of shift, level or pass days. (Arb. op. at 8.) The Arbitrator noted the Union's evidence, including the schedule for the week of March 9, 2014, and found that the County ignored the seniority status of union members and did not adhere to the established bidding process. In particular, the County had granted the Monday through Friday, 7:00 a.m. to 3:00 p.m. work schedule with Saturday/Sunday pass days to Officer Pastore when Officer Lawrence Reilly and Officer David Isenberg both had greater seniority than Pastore and should have been granted their bids before Pastore on that schedule. The Arbitrator noted that the grievance sought to remove Pastore from his position in Internal Affairs, but stated that the Award does not necessarily preclude Pastore from performing duties in Internal Affairs.

The County appealed to the trial court, which issued an order denying the County's Petition to Vacate Arbitration Award and affirming the Arbitrator's Award in all respects. Subsequently, the trial court issued an opinion in support of its order. The County now appeals to this Court.

4

This Court's standard of review of a grievance arbitration award is one of deference to the award, and our scope of review is the essence test. *Slippery Rock University of Pennsylvania, Pennsylvania State System of Higher Education v. Association of Pennsylvania State College and University Faculties,* 916 A.2d 736 (Pa. Cmwlth. 2007). Under the essence test,

> the award must be upheld if: (1) the issue as properly defined is within the terms of the collective bargaining agreement; and (2) the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. An arbitrator's award will be vacated only if it 'indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.' The test is not whether the reviewing court agrees with the arbitrator's interpretation of the collective bargaining agreement but whether the arbitrator's interpretation and application of the agreement can be reconciled with the language of the agreement.

*Department of Corrections, State Correctional Institution at Pittsburgh v. Pennsylvania State Corrections Officers Association,* 56 A.3d 60, 64 (Pa. Cmwlth. 2012) (citation omitted). The essence test is subject to a narrow exception that allows a court to vacate an arbitrator's award if it violates the public policy of the Commonwealth. *Westmoreland Intermediate Unit #7 v. Westmoreland Intermediate Unit #7 Classroom Assistants Educational Support Personnel Association, PSEA/NEA*, 939 A.2d 855 (Pa. 2007). "Such public policy, however, must be well-defined, dominant, and ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Id.* at 866.

5

The County first argues that the Arbitrator's determination that the CBA's bidding process applied to the County's assignment of light duty positions does not draw its essence from the CBA. The County maintains that the alleged violations are explicitly excluded from the arbitration process because the CBA's grievance procedure excludes any matter reserved to the County by authority of law. The County points out that the Public Employe Relations Act[4] (PERA) does not require that light duty programs be negotiated, and that the County retains a managerial prerogative to create and implement light duty programs. The County further maintains that the managerial prerogative extends to include those tangential terms and conditions of employment which might otherwise constitute bargainable terms, such as the assignment of light duty shift and pass days here.[5] Accordingly, the County contends that this matter is not arbitrable and that the Arbitrator exceeded his jurisdiction by addressing this issue.

The Union, on the other hand, accepts that the creation of light duty assignments are managerial prerogatives and that a unilateral decision to assign a light duty position to an employee is within said prerogative. However, the Union maintains that the specific light duty assignment here violates the terms of the CBA concerning shift assignments. The Union argues that, pursuant to the CBA, a Floater needs seniority in order to hold particular pass days.

---

[4] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101 – 1101.2301.

[5] In support of this argument, the County relies on this Court's unreported opinion in *York County Prison v. International Brotherhood of Teamsters, Local 776*, (Pa. Cmwlth., 2143 C.D. 2006, filed January 30, 2008). Unreported opinions of this Court may be cited for their persuasive value only. 210 Pa. Code § 69.414. More importantly, as will be explained later, *York* is distinguishable, because the language of the CBA concerning managerial prerogative here significantly differs from that in *York*.

6

"[T]he creation of a light duty program is an exercise of managerial prerogative, and therefore is not subject to mandatory bargaining." *Teamsters Local 77 & 250 v. Pennsylvania Labor Relations Board*, 786 A.2d 299, 304 (Pa. Cmwlth. 2001). However, "while PERA does not obligate a public employer to negotiate matters of 'inherent managerial policy' …, if a public employer chooses to do so, absent contrary positive legislation, it is bound by the terms of a CBA." *Pennsylvania State System of Higher Education v. Association of Pennsylvania State College & University Faculties*, 98 A.3d 5, 13 (Pa. Cmwlth. 2014) (quotation marks and citations omitted).

Here, Article III of the CBA defines a grievance as "[a]ny complaint alleging any breach, misapplication or violation of any of these Agreement provisions" subject to the following restriction:

> Any complaint over any matter or action not addressed in these Agreement provisions, specifically excluded by any terms thereof, or reserved to the County by authority of any law or public policy thereon, shall not be subject to any of the Grievance Procedure applications of these Article III such provisions.

(Art. III, 1.A., 2.A.) In addition, Article XV of the CBA, notably entitled "Manage Rights," provides:

> The County retains and reserves unto itself all inherent, statutory and other powers, rights, authority, duties and responsibilities of its management status— including but not limited to those of operating, manning and securing its facilities, hiring, scheduling, directing, supervising and, for just cause, disciplining and discharging its employees—*which are not expressly modified or restricted by any*

7

> *specific and enforceable terms or conditions of these*
> *Agreement provisions.*

(emphasis added.) Importantly, the parties here agreed to a limitation on the County's managerial prerogative to the extent that such matters are modified or restricted by the CBA.[6] While light duty normally is a managerial prerogative, the

---

[6] This is unlike the managerial prerogative provision in *York* which provided:

> The Management of the County operations and the discretion of the working force is vested exclusively in the Employer and includes, but is not limited to the right to hire, suspend, discipline or discharge for proper cause, or transfer, and the right to relieve employees from duty because of lack of work or for other legitimate reasons under this Agreement; make and enforce rules of conduct; select supervisory and management personnel; introduce new or improved methods, equipment or facilities or to change existing methods or facilities; determine the total employment requirements, hours of work required for a particular operation and job assignments and job classification of personnel; establish functions, programs, budgets, organizational structure and standards of service and performance.

*York*, slip op. at 7-8 (citations omitted).

Additionally, *County of Allegheny v. Allegheny County Prison Employees Independent Union*, 341 A.2d 578 (Pa. Cmwlth. 1975), is also distinguishable. The County points out that *County of Allegheny* involved the same parties as here and that the CBA here retains the same language quoted in that case; therefore, the County maintains that matters reserved to the County "by authority of law" are excluded from the grievance procedures. Notably, in that case, which involved lunch procedures, we stated that if the Union wanted to escape the provisions concerning leaving certain matters to the discretion of the County and excluding such matters from the grievance procedure, it was incumbent upon the Union to negotiate and explicitly reach an agreement on the particular condition. Here, as will be explained, the parties did that with respect to light duty.

The other cases cited by the County in its brief are distinguishable as well, and in some instances, also not binding authority on this Court. Those cases concerned charges of unfair labor practices and whether the employer had the duty to bargain over a particular matter or whether the matter constituted a managerial prerogative over which there was no duty to bargain. Here, however, the parties elected to bargain and agreed to some limitations on the County's managerial prerogative as set forth in Articles XV and XXX.

8

parties negotiated a provision concerning light duty. Specifically, Article XXX of the CBA, entitled Light Duty, states:

> All correctional officers regardless of their status (light duty, jail injury, illness or injury) have the right to bid and hold seniority bid jobs, level bids, shift and pass day bids. Once the officer is awarded the bid job and is performing his or her duties, then Appendix "A" #1C will take effect. Officers electing not to take a bid will be afforded the opportunity to express their choice of shift and pass days according to their seniority.

Accordingly, officers who are deemed Floaters, such as Pastore, will be afforded the opportunity to express their choice of shift and pass days according to their seniority.[7]

Reviewing the Arbitrator's Award as we must under the essence test, we cannot say that it is without foundation in, or fails to logically flow from, the CBA. The issue is properly defined within the terms of the CBA. Specifically, with respect to the bidding procedure in Article XXVIII (which includes Floaters) and with respect to the light duty agreement under Article XXX which allows "correctional officers regardless of their status … to express their choice of shift and pass days according to their seniority," the CBA does arguably address Pastore's light duty position and the assignment of shift and pass days based on seniority. Importantly, it can be logically said that this aspect of light duty is not excluded from the grievance procedures by authority of law or as a matter of managerial prerogative, because the "Manage Rights" provision of the CBA

---

[7] *See* n. 1, *supra*.

contains a limitation on those rights to the extent those rights are modified or restricted by other provisions of the CBA. Articles XXVIII and XXX address bidding and light duty, respectively, and modify or restrict the County's "Manage Rights." Thus, while light duty is a managerial prerogative, here the parties included a provision in the CBA concerning the particular aspect of how shift and pass days would be assigned for a Floater on light duty. As a result, the parties are bound by the resulting CBA provisions dealing with light duty positions and the seniority preference specified for Floaters, *see Pennsylvania State System*, and thus the issue is within the terms of the CBA.

The County exercised its managerial prerogative and assigned Pastore to a light duty position; Pastore was designated as a Floater while holding that position, and that status did not change.[8] Pursuant to the CBA, officers who are Floaters express a preference for shift and pass days based on seniority. Because Article XXX provides for correctional officers in a light duty status to express their choice of shift and pass days according to their seniority and because Article XXVIII allows Floaters to express their preference for pass days which are awarded based on seniority, the CBA arguably addresses the situation of assigning shift and pass days to a Floater on light duty and subjects that situation to the seniority bidding process. Thus, the Arbitrator's Award, which relies on these provisions, is rationally derived from the language of the CBA. Moreover, the Arbitrator's Award does not direct the County to cease assigning Pastore the light

---

[8] Light duty assignments are possible regardless of shift, level or pass days. Thus, light duty is not unique to Saturday/Sunday pass days, and there is nothing preventing the County from exercising its managerial prerogative and assigning Pastore to a light duty position.

10

duty position, nor does it necessarily eliminate Pastore's Saturday/Sunday pass days. Rather, the Award directs the County to cease assigning Pastore work schedules or pass days while denying those days to more senior members. The Arbitrator's interpretation can be reconciled with the language of the CBA, and it is not the role of this Court to override that determination by reinterpreting the CBA. Accordingly, we may not vacate the Award.

The County also argues that the grievance was untimely. Specifically, the County maintains that the CBA requires that this type of grievance be filed within five (5) days of the event complained of, but that the County assigned Pastore to this light duty position over seven (7) years ago.[9] The County contends that the grievance could have been filed in 2007, and the Union failed to do so. Therefore, the County maintains that the filing of the grievance more than seven

---

[9] The County's argument does not dispute that the timeliness issue is defined within the terms of the CBA, which is the first prong of the essence test. Instead, its argument only challenges the second prong of the essence test, i.e., the Award is not derived from the CBA because the grievance was not filed within the time limitation set forth in the CBA.

Article III of the CBA provides:

> [3.A.] Any grievance not challenging any suspension or discharge action (which shall be initiated and submitted under the Step 2 procedures hereof) shall first be discussed with the Shift Commander of the employee(s) initiating it within five (5) work days following the event or action complained of, or following the event or action complained of [sic], or following the date such employee(s) had or should have learned of its occurrence in an effort to resolve it at that management level.
> …
> [4.A.] It is agreed that any grievance must be presented under the procedures of this Article promptly and within the prescribed time limitations….

(CBA Art. III 3.A, 4.A.)

11

years beyond the contractually established period cannot draw its essence from the CBA.[10]

On the other hand, the Union states that although the Arbitrator referred to this as a "continuing violation," the Arbitrator explained that when a new schedule is posted a violation occurs again. The Arbitrator also explained that every day that more senior bargaining unit members work schedules less preferable (according to the bidding process) than less senior members, the CBA is violated again. The Union maintains that each newly posted schedule is a new incident-in-fact, a new decision made by management under new facts and circumstances and officers that can differ from week to week, and therefore, can be a new violation that can be separately grieved. Moreover, the Union points out that it does not seek to challenge any past schedule assignments and is not seeking a retroactive remedy. It only seeks to remedy those violations from March 9, 2014, forward.

As stated by the Union and accepted by the Arbitrator, there is the potential for a new violation each time the schedule is posted depending on whether a less senior officer's (Pastore) assignment supersedes another more senior officer's preference for the same shift and pass days. Indeed, it is the nature

---

[10] The County also makes arguments, which we classify as "fairness" arguments, including that the Union waived any right to contest the assignment because Pastore allegedly waived his bidding rights at the Union's request, and that the Union apparently made an inconsistent argument in a recent anti-nepotism case. These arguments are irrelevant, particularly where our role is to determine whether the Arbitrator's Award satisfies the essence test.

of the Floater position that schedules vary.[11]   If there are shift and pass days available in a given week that coincide with a more senior officer's expressed preference but that senior officer is denied that shift and pass days, a new violation occurs based on those unique circumstances.   In other words, this alleged violation is not inescapably grounded upon events that occurred back in 2007 when the County first assigned Pastore a shift with Saturday/Sunday pass days.  Here, the violation is not solely dependent upon the incident of Pastore being assigned Saturday and Sunday pass days but also depends on the other officers' expressed preference and availability of shifts and pass days.[12]

_____

[11] For example, an examination of the schedules offered into evidence shows that for the week of March 9, 2014, two Floaters (Pastore and Officer Vollberg) were scheduled for Saturday/Sunday pass days.  (R.R. at 191-92.)  For the week of March 23, 2014, however, Officer Vollberg was assigned Friday/Saturday pass days, although his expressed first preference was the same—Saturday/Sunday pass days, and he had higher seniority than Pastore.  *Compare* R.R. at 192 *with* R.R. at 193-94.  Thus, while Officer Vollberg would have no grounds for a grievance such as the one here based on the week of March 9, 2014 schedule, he arguably does for the week of March 23, 2014 schedule.

[12] The situation here is different from the cases relied on by the County, where the employer factually took one action.  *See Department of Corrections v. Pennsylvania State Corrections Officers Association*, 56 A.3d 60 (Pa. Cmwlth. 2012) (suspension of officers for indefinite period of time); and *City of Allentown*, 19 PPER 19123 (Final Order 1998) (unilateral change in medical insurance plans to continue prospectively and continuously for an unknown period of time).

The other cases relied on by the County are distinguishable as well, and some also are not binding on this Court.  *See Casner v. American Federation of State, County and Municipal Employees*, 658 A.2d 865 (Pa. Cmwlth. 1995) (concerning loss of payment of wages/benefits from each paycheck); *Zellie v. Department of Corrections*, (Pa. Cmwlth., No. 97 M.D. 2011, filed March 1, 2012) (concerning loss of payment and deductions from inmate accounts based on prior court order pursuant to section 9728 of the Sentencing Code, 42 Pa. C.S. § 9728, and the six-month statute of limitations set forth in Section 5522(b)(1) of the Judicial Code, 42 Pa. C.S. § 5522(b)(1)); *see also Curley v. Smeal*, 41 A.3d 916 (Pa. Cmwlth. 2012) (same), *overruled on other grounds by Morgalo v. Gorniak*, 134 A.3d 1139 (Pa. Cmwlth. 2016); *Morton Harr v. Westmoreland County Community College*, 45 PPER 85 (January 21, 2014) (finding subsequent refusals to award overtime were based on initial refusal that employee was not eligible).

Although we acknowledge that the portion of the Arbitrator's decision discussing the timeliness of the grievance does not expressly reference the week of March 9, 2014 schedule, (*see* Arb. op. at 9), it is apparent from reading the Arbitrator's decision in its entirety that this is the operative schedule giving rise to the grievance.[13] (*See* Arb. op. at 4, 8 (summarizing the Union's evidence and setting forth findings and analysis).) As to the schedule for the week of March 9, 2014, there is nothing to indicate that the grievance was not timely.[14] Thus, the Arbitrator's decision that the grievance is timely is rationally derived from the CBA. Accordingly, it satisfies the essence test.

For the foregoing reasons, we must affirm the trial court's decision that denied the County's Petition to Vacate Arbitration Award and affirmed the Arbitrator's Award in all respects.

_____
JULIA K. HEARTHWAY, Judge

Judges McCullough and Wojcik did not participate in the decision of this case.

---

[13] Thus, we reject the County's argument that the trial court improperly performed a *de novo* review and engaged in fact-finding when it stated the relevant schedule was posted for March 9, 2014. Additionally, we note that in our appellate role, this Court must review the Arbitrator's Award, and not the trial court's decision, to determine if the Award's essence can be drawn from the CBA.

[14] The County argues only that the grievance was untimely because it should have been filed when Pastore was first assigned to the shift in 2007; the County does not contend that the grievance was untimely if the March 9, 2014 schedule is the operative incident giving rise to the grievance.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Allegheny, Pennsylvania,  :
                   Appellant  :
                                :
          v.             :  No. 744 C.D. 2016
                                :
Allegheny County Prison       :
Employees Independent Union  :

## O R D E R

AND NOW, this 13th day of July, 2017, the order of the Court of Common Pleas of Allegheny County is hereby affirmed.

_____
JULIA K. HEARTHWAY, Judge