IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Allegheny, Pennsylvania, : 
                         Appellant : 
                                        : 
           v. : 
                                          : 
Allegheny Court Association of : No. 951 C.D. 2015
Professional Employees : Argued: April 12, 2016


BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
                   HONORABLE ROBERT SIMPSON, Judge
                   HONORABLE DAN PELLEGRINI, Senior Judge


OPINION BY
SENIOR JUDGE PELLEGRINI           FILED: May 2, 2016


        Allegheny County, Pennsylvania (County) appeals from an order of the Allegheny County Court of Common Pleas (trial court) upholding an arbitration award which found a grievance filed by the Allegheny Court Association of Professional Employees (Association) timely under the parties' collective bargaining agreement and sustained the grievance on its merits. For the reasons that follow, we affirm.


**I.**

**A.**

        The County and the Association[1] entered into a collective bargaining agreement (CBA) effective January 1, 2011, through December 31, 2013. Article VIII of the CBA contained a "me too" provision that allowed the County to provide

---

[1] The Association is comprised of between 331-340 probation officers who were appointed by the Allegheny County Court system.

different health care coverage if 75% of the unionized and 100% of the non-unionized employees were covered by the plan. Section 3(H) of that Article regarding "Cost Containment" provided that:

> It is specifically understood that during the term of this Agreement, the County shall have the right to institute, delete or modify the full range of wellness and all cost containment measures in hospitalization, surgical, major medical, and dental coverage. The program shall be at no additional cost to employees (other than the participation arrangements set forth herein) and benefits shall not be reduced. *Effective January 1, 2011, each bargaining unit employee who receives hospitalization insurance shall contribute 2.0% of his or her base salary towards the premium.* Longevity payments shall not be included in calculation of base salary for the purpose of premium contributions for hospitalization insurance. *Contributions shall be made by paycheck deduction.*

(Reproduced Record [R.R.] at 84a) (emphasis added).

Article III, Section 3(A) of the CBA set forth a grievance procedure requiring that:

> [a]ny alleged grievance shall be reduced to writing within seven (7) work days from the alleged occurrence of the grievance, or within seven (7) work days from the time the grievant reasonably should have known or been aware of the existence of the situation giving rise to the alleged grievance.

(*Id.* at 75a.) Section 4(A) also provided that the grievance "must be presented under the procedures of this Article promptly and within the prescribed time limitations." (*Id.* at 76a.)

2

In attempting to negotiate a successor agreement, the parties reached an impasse in July 2013 regarding the CBA to take effect January 1, 2014, and proceeded to arbitration on the issue before Arbitrator Lewis R. Amis (Arbitrator Amis). Just before the record closed, Assistant County Solicitor Diego Correa advised the Association via letter dated April 8, 2014, that the County intended to implement a new healthcare plan under the provisions of the existing CBA on the basis that 75% of unionized employees were transferred to the new healthcare program. As per the letter, the new healthcare plan provided the following payroll deductions: 2014—2.25%; 2015—2.25%; and 2016—2.5%. (*Id.* at 56a.) None of those increases were authorized in the CBA.

Arbitrator Amis issued an award dated May 6, 2014 (Award), effective from January 1, 2014, through December 31, 2017. The Award continued the prior CBA in large part, with certain changes to the applicable salary schedule, compensation plan, longevity schedule, insurance benefits and cost containment thereof, and sick leave. Significantly, with respect to insurance benefits, the Award stated:

> Article VIII - Insurance Benefits
>
> Section 1.A. Change the requirement that the County may provide new or different health insurance coverage if, "75 percent of all other County unionized…employees are covered under the new plan," to "50 percent of all other County unionized employees…."
>
> ***
>
> Section 3.H. Cost Containment
>
> Continue 2 percent contribution of base salary towards premium for hospitalization insurance for the life of this

Agreement. Retain existing relevant conditions, rights, and restrictions contained in this section.

(*Id.* at 98a.) On June 20, 2014, after the successor CBA Award was handed down, the County implemented the increased payroll deductions referenced in Assistant County Solicitor Diego Correa's April 8th letter.

On August 19, 2014, the Association's President, Stephen Bechtold (President Bechtold), advised William Graham, the Deputy Director of the Allegheny County Department of Human Services, that the payroll deductions should be limited to 2% for the life of the current CBA—that is, until December 31, 2017. The County disagreed, responding through its counsel that "the language limiting payroll deduction to 2% is subject to the 'me too' language providing that the County may change health care benefits if 50% of other County employees change their healthcare." (*Id.* at 59a.) President Bechtold rejected this interpretation, explaining, "[t]he fact that the Arbiter singled out this issue separate from the language addressing changing the 'me too' language from 75% to 50% in the Award makes his intentions clear." (*Id.*) In an August 21, 2014 e-mail, he stated that the Association's counsel would be in contact with the County "not only [to] resolve this issue but to also complete the incorporation of the Award language into the current contract for printing and distribution." (*Id.*)

Counsel for the Association stated the following in an e-mail dated September 16, 2014:

> I am disappointed with the County's position on this issue. Certainly the award provision is not just superfluous verbiage. Since the County has entered a definitive position, but this is a continuing matter, there would be no

4

> time limitation on filing and prosecuting a grievance up through an arbitration award. It would seem to be an unnecessary process when we could submit the matter to the Arbitrator for his statement of intention. We could agree to abide by his statement as being final on the matter. Give me your thoughts on this approach. I will hold off contacting him to see if he would be willing to receive and respond to the question and will not do so without you joining in with the statement of the question. Perhaps a conference call would be suit [sic] the matter.

(*Id.* at 61a.) Later that day, the Association's counsel sent a second e-mail, requesting that "either the County backs off its position or the matter is submitted to this Arbitrator [Amis] for his intention which will resolve the matter." (*Id.*)

On September 25, 2014, following a conversation with counsel for the Association, the County memorialized its position that its ability to increase the 2% payroll deduction was not affected by the Award and affirmed its refusal to adjust the payroll deductions downward. Likewise, the County refused to submit the issue to Arbitrator Amis for clarification, but instead insisted that the Association file a new grievance.

**B.**

Accordingly, on October 6, 2014, the Association filed a formal grievance with respect to the increased payroll deductions, and the parties proceeded to arbitration. Before Arbitrator Gerald Kobell, Esquire (Arbitrator Kobell), the County argued that the grievance was untimely filed as per the CBA's seven work day-time limit. Arbitrator Kobell nonetheless entertained the grievance, finding it timely because the seven days did not begin to accrue until September 25, 2014. He noted that:

5

There was no evidence introduced by the County, and I assume that none exists, for the County payroll department right after February 6, 2014, to notify the Probation Officers in the unit that as soon as the calculations could be completed, or perhaps until any appeal period expired, the County would commence withdrawing 2.25 percent instead of 2 percent from employees' pay. Most likely, the difference amounted to only a few dollars, and amid other possible changes, it just was not readily noticeable. I think that the County, if it believed that the "me too" language trumped the Arbitrator's award of 2 percent for the life of the Agreement, should have communicated that position to the Association and to the affected employees. It did neither. It was not until August 14, 2014, several pay periods later, that the increased deduction was called to the attention of the Association (or perhaps President Bechtold noticed it himself). This triggered President Bechtold's voicemail message to the Allegheny County Department of Human Resources, pointing out that Arbitrator Amis, in the Association's view, had mandated 2 rather than 2.5 percent for the life of the Agreement.

***

The e-mails exchanged on September 25 was [sic] the first time when the filing of a new grievance was mentioned by either Attorney Delaney, on behalf of Association, or Assistant County Solicitor Correa, on behalf of the County. Up until that date, counsel for the respective parties were discussing other issues and alternatives, but not the filing of a new grievance before a new arbitrator. Until then, in my view, they were engaged in traditional collective bargaining to resolve all of the remaining issues in dispute before them, including the 2–2.25 percent employee participation payment.

(*Id.* at 26a, 31a.) With respect to the merits, Arbitrator Kobell agreed with the Association's argument that Arbitrator Amis's Award disallowed the County's increase in member contributions above 2%. Arbitrator Kobell ordered the County to reimburse the Association's members for their healthcare participation payments in

6

excess of this amount and to continue the 2% deduction for the life of the CBA ending on December 31, 2017.

The County filed a petition to vacate the Award (petition) with the trial court, averring that the Award did not draw its essence from the CBA because it ignored the CBA's contractually established deadline for filing grievances. In response, the Association filed preliminary objections, asserting that the issue of timeliness is a final determination left to the Arbitrator and, therefore, the County's petition must be dismissed for legal insufficiency.[2] Ultimately, the trial court sustained the Association's demurrer and dismissed the County's petition with prejudice "because the black letter law of Arbitration is that the Arbitrator decides procedural issues—like filing deadlines," and because the Award drew its essence from the terms of the CBA. (8/17/15 Memorandum Order, at 1–2.) This appeal followed.

## II.

As we have previously stated, grievance awards under the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§1101.101–1101.2301, are reviewed pursuant to the deferential essence test, which requires affirmance of an award if: "(1) the issue as properly defined is within the terms of the agreement, and (2) the award can be rationally derived from the agreement." *Neshaminy School District v. Neshaminy Federation of Teachers*, 122 A.3d 469, 474 (Pa. Cmwlth. 2015). Pursuant to this test, our review is "highly circumscribed," meaning that "[w]here it is determined that the subject matter of the

---

[2] The Association also alleged improper original service of process; however, the trial court did not render its decision based upon this ground, and it does not factor into our analysis.

dispute is encompassed within the terms of the agreement, the validity of the arbitrator's interpretation is not a matter of concern to the court." *Leechburg Area School District v. Dale*, 424 A.2d 1309, 1312–13 (Pa. 1981).

## A.

Initially, we must determine whether, as the Association contends, an arbitrator's procedural decision is final and not reviewable by the courts, even under the circumscribed review of the essence test. In the seminal case of *John Wiley & Sons, Inc. v. Livingston*, the United States Supreme Court addressed a split among the United States Courts of Appeals regarding whether trial courts or arbitrators determine if the procedural conditions to arbitration have been satisfied. 376 U.S. 543, 84 S. Ct. 909 (1964).

In that case, a union argued that its members need not comply with the grievance procedures where doing so was futile and where the employer engaged in continuing violations of a CBA. In noting the difficulty in distinguishing procedural and substantive aspects of a labor dispute, the Supreme Court reasoned:

> We think that labor disputes of the kind involved here cannot be broken down so easily into their "substantive" and "procedural" aspects. Questions concerning the procedural prerequisites to arbitration do not arise in a vacuum; they develop in the context of an actual dispute about the rights of the parties to the contract or those covered by it. . . .
>
> Doubt whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration. . . . It would be a curious rule which required that intertwined

8

issues of "substance" and "procedure" growing out of a single dispute and raising the same questions on the same facts had to be carved up between two different forums, one deciding after the other. Neither logic nor considerations of policy compel such a result.

*Id.* at 556–57, 84 S. Ct. at 918.

In holding that procedural issues were not reserved for the courts, the United States Supreme Court went on to hold that those issues should be considered "as aspects of the dispute which called the grievance procedures into play," and, therefore, were subject to arbitration. *Id.* at 559, 84 S. Ct. at 918. "Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *Id.* at 557, 84 S. Ct. at 918. Importantly, the Supreme Court did not consider whether an arbitrator's ruling on "procedural" questions may be appealed or the appropriate standard to apply to such questions on appeal.

Consistent with *Wiley & Sons* and Third Circuit precedent,[3] Pennsylvania courts adopted the federal standard regarding procedural arbitrability, holding that procedural questions should be resolved by the arbitrator unless the parties to a CBA limit the arbitrator's jurisdiction by specifying in the CBA that the arbitrator has no jurisdiction over procedural matters. *See, e.g.*, *Kardon v. Portare*, 353 A.2d 368, 370 (Pa. 1976).

---

[3] *See Radio Corporation of America v. Association of Professional Engineering Personnel*, 291 F. 2d 105 (3d Cir. 1961).

9

In *School District of City of Duquesne v. Duquesne Education Association*, a case upon which the County relies, a teacher filed a grievance after the mandated 15-day deadline. 359 A.2d 850, 851 (Pa. Cmwlth. 1976), *rev'd*, 380 A.2d 353 (Pa. 1977). Nonetheless, his grievance proceeded through the first three levels of the enumerated grievance procedure, during which the school district failed to raise the timeliness issue. 359 A.2d at 852. As such, the arbitrator concluded that the school district waived this issue and sustained the grievance on its merits. *Id.* On appeal to this Court, we reversed, finding that because the CBA did not specifically provide for the procedural question involved (waiver), the arbitrator's decision finding that waiver occurred prior to arbitration was erroneous. *Id.* As such, we dismissed the grievance as untimely filed.

On further appeal, our Supreme Court reasoned that, as per *Kardon*, an arbitrator's jurisdiction may be limited but in the CBA at issue, there was no limitation prohibiting the arbitrator from deciding procedural issues. *School District of City of Duquesne v. Duquesne Education Association*, 380 A.2d 353, 356 (Pa. 1977). As such, it held that under *Wiley & Sons*, the issue of waiver was properly before the arbitrator. *Id.* Specifically, the Court explained:

> In the instant case, as in *Kardon*, we can find no limitation in the collective bargaining agreement which would prohibit an arbitrator from deciding procedural issues. As the final determination of the procedural issue is to be left to the arbitrator, we believe that Commonwealth Court erred in reversing the arbitrator.

*Id.* That case, however, did not hold that an arbitrator's procedural determination was insulated from review.

10

In fact, in *State System of Higher Education v. United Plant Guard Workers of America, Local Union No. 509*, 612 A.2d 645 (Pa. Cmwlth.), *appeal denied*, 618 A.2d 403 (Pa. 1992), we reviewed the same issue the Association suggests we are precluded from reviewing here: whether an arbitrator's determination that a grievance was timely filed – when the subject CBA provided specific terms regarding timelines for filing grievances – violated the essence test. There, the CBA specified that grievances must be filed within 15 working days of the event giving rise to the grievance, but the arbitrator found timely a grievance filed five years after the fact. *Id.* at 647. On review, we held:

> [t]he agreement explicitly provided for a fifteen day limit, and the arbitrator's decision to allow the late filing essentially ignored the language limiting the filing of grievances to fifteen days from the date of the occurrence giving rise to the grievance. As such, the decision of the arbitrator did not draw its essence from that agreement.

*Id.* at 647.

*Wiley & Sons* and its progeny stand for the proposition that, unless expressly precluded from resolving procedural issues in the CBA, questions of procedure, like substantive issues, are within an arbitrator's purview. Contrary to the Association's suggestion, this line of cases does not render final and unreviewable an arbitrator's resolution of a procedural issue. To hold otherwise would require the courts to parse out the differences between questions of procedure and substance, simply to determine which issues are reviewable by a trial court. The Supreme Court of the United States expressly disavowed this position. *See Wiley & Sons*, 376 U.S. at 557, 84 S. Ct. at 918 ("Neither logic nor considerations of policy compel such a result.").

11

**B.**

Having found that Arbitrator Kobell's procedural determination is subject to review, we will proceed to apply the essence test. The County does not dispute that the timeliness issue was within the terms of the parties' CBA, only that the Award was not rationally derived from the agreement under the second prong of the essence test. In this respect, we "will not second-guess the arbitrator's fact-finding or interpretation as long as the arbitrator has arguably construed or applied the CBA." *Neshaminy Sch. Dist.*, 122 A.3d at 474.

Specifically, the County maintains that the Award does not draw its essence from the CBA because it disregards the contractual time limits it contains. The gravamen of the County's argument is that the October 6, 2014 grievance was filed 98 work days after the County notified the Association by letter dated April 8, 2014, of its intent to implement the new deductions, and 75 work days after the new deductions were actually implemented. Because the CBA requires a grievance to be filed within seven work days of an event giving rise to a grievance or within seven work days from the date on which the Association or its members reasonably should have discovered such an event, the County contends that the Award, finding the grievance timely filed, does not draw its essence from the CBA.

The County argues that the Association should have filed a grievance by April 17, 2014, despite the fact that the arbitration was ongoing and Arbitrator Amis had not yet decided whether to raise the 2% base salary contribution as proposed by the County. It was not until the Award was issued in May 2014 that the Association learned that the 2% contribution remained in effect for the life of the agreement, despite the fact that the County had proposed an increased contribution. Thus, as of

12

April 17, 2014, the Association had no knowledge of whether the County's proposed actions would violate the new CBA.

Accordingly, by e-mail dated August 19, 2014, the Association advised Deputy Director Graham of this issue. In subsequent e-mails, the parties attempted to resolve the issue by reference to Arbitrator Amis's Award. By September 22, 2014, Arbitrator Kobell found it still unclear whether the County intended to proceed with its position, and the Association expressly inquired that day whether the County intended to "back[ ] off its position" or to submit the matter to arbitration. (R.R. at 61a.) On September 25, 2014, the County confirmed that it maintained its position, and within seven business days, the Association filed its formal grievance.

The CBA allows an arbitrator to decide when an event giving rise to a grievance occurred *or when a grievant discovered or reasonably should have discovered the occurrence*. In this context, Arbitrator Kobell rejected the County's argument that the Association was put on notice of the increased premiums as of its April 8, 2014 letter or, alternatively, as of its June 20, 2014 deductions, noting that the former was issued before Arbitrator Amis's Award and the latter amounted to only a few dollars' difference, which was likely insufficient to put the grievants on notice. Instead, he found that the seven work day period did not begin to accrue until September 25, 2014:

> The e-mails exchanged on September 25 was the first time when the filing of a new grievance was mentioned by either Attorney Delaney, on behalf of the Association, or Assistant County Solicitor Correa, on behalf of the County. Up until that date, counsel for the respective parties were discussing other issues and alternatives, but not the filing of a new grievance before a new arbitrator. Until then, in my view, they were engaged in traditional collective bargaining to

13

> resolve all of the remaining issues in dispute before them, including the 2–2.25 percent employee participation payment.

(R.R. at 31a.) We are not free to render our own factual findings, and because Arbitrator Kobell's Award arguably construed and applied the CBA within the scope of his authority, his decision satisfies the essence test. *See Neshaminy Sch. Dist.*, 122 A.3d at 474. We, therefore, affirm the trial court's order sustaining the Association's preliminary objections to the County's petition upholding the Award.[4]

_____
DAN PELLEGRINI, Senior Judge

Judges McCullough and Wojcik did not participate in the decision in this case.

---

[4] In arguing that Arbitrator Kobell's Award does not flow from and is not based in the CBA because it did not apply the CBA's strict, seven work day deadline, the County fails to recognize that as per the CBA, the deadline did not begin to run until the grievant reasonably should have discovered the violation. This is a factual inquiry which turns upon the specific circumstances of the case, *see Fine v. Checcio*, 870 A.2d 850, 859 (Pa. 2005) (discussing the analogous discovery rule, which tolls the statute of limitations until a party knows or reasonably should know of his injury and its cause), and background concerning the parties' ongoing negotiations is germane to this issue. Contrary to the County's argument, Arbitrator Kobell did not consider this background in determining whether an otherwise strict deadline was tolled by settlement negotiations. Additionally, in no way was Arbitrator Kobell's Award premised upon a finding that each day constituted a new, ongoing violation of the CBA, giving rise to a new filing deadline. The County has mischaracterized Arbitrator Kobell's Award in these respects, and we find its arguments unavailing.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Allegheny, Pennsylvania, :
        Appellant :
            :
     v.      :
            :
Allegheny Court Association of :
Professional Employees   : No. 951 C.D. 2015

## **O R D E R**

AND NOW, this 2<u>nd</u> day of <u>May</u>, 2016, the order of the Court of Common Pleas of Allegheny County dated May 15, 2015, in the above-referenced case is affirmed.

             _____

             DAN PELLEGRINI, Senior Judge