IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Allegheny, Pennsylvania :
:
v. :
:
Allegheny County Prison Employees :
Independent Union, : No. 38 C.D. 2024
                Appellant : Argued: October 8, 2024


BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                             FILED:  December 5, 2024

        The Allegheny County Prison Employees Independent Union (Union) appeals from the Allegheny County (County) Common Pleas Court's (trial court) January 5, 2024 order: (1) granting the County's Petition to Vacate; (2) vacating Arbitrator Jane Desimone's (Arbitrator) September 22, 2023 arbitration award (Award) that sustained the Union's grievance; and (3) denying the grievance. The Union presents two issues for this Court's review: (1) whether the trial court erred by holding that the Arbitrator lacked jurisdiction over the dispute because the Arbitrator found that the parties' had waived the Collective Bargaining Agreement (CBA) grievance procedure time limits, a finding which the trial court held was not rationally derived from the CBA; and (2) whether the trial court erred by vacating the Award because the Arbitrator's holding finding a lack of just cause to discipline the grievant was rationally derived from the CBA. After review, this Court affirms.

The County employed Robert Pindel (Grievant) as a Correctional Officer at the County's jail (jail/ACJ) for 22 years. On April 6, 2022, newly-elected Union President Brian Englert (President Englert) sent an email to all Correctional Officers explaining a grievance the Union had filed in protest of overtime (OT) equalization and the jail's Critical Response Unit (CRU), as implemented by an agreement the previous Union President Jason Batykefer and the County had reached. President Englert stated therein:

> Officers,
>
> I just wanted to provide an update on the CRU grievance filed. This agreement affects OT equalization for [Correctional] Officers negatively. This agreement also impacts your forced [OT] negatively. My offer was to leave the agreement in place and bargain over some of the conditions which seemed unfair for all [Correctional] Officers. It was denied by the County because the agreement was signed on [November 10], the day of the election, even though the prior board voted <u>against</u> making any agreement.
>
> I believe we do need a team like this, but not with an agreement like this. The agreement is attached and it's the agreement in effect right now. It was written to provide the CRU team benefits that override our CBA. I requested that we go to arbitration on this. I promised transparency[,] so I feel you should be aware in the case [sic] the team expands.

Reproduced Record (R.R.) at 47a (emphasis in original).

While at work on April 6, 2022, Grievant responded to President Englert's email. In an email sent to all jail staff, Grievant rejoined:

> What a joke that this was signed on the day of the elections by our Ex President. And what a slap in the face to all [Correctional] Officers in this building to say that the CRU training is so physical and mentally demanding that they can't be forced for OT.

> Well maybe before this was signed our former [U]nion officials/president did their research and discovered that Correctional Officers have the highest rate of [Post-Traumatic Stress Disorder (]PTSD[)] out of any job including the military and our life expectancy of a Correctional [O]fficer (not just a CRU member) is 58 [years] old because of the mental demands, but oh ya [sic] the CRU teams issues are more important than the other Union members in this building.  But once again make a secret agreement that only benefits a small amount of our Union members[.]    You should be ashamed of yourself . . . SMH [sic] . . . .

*Id*.

Following a *Loudermill* hearing[1] conducted on May 11, 2022, the County issued Grievant a Suspension Letter on May 19, 2022, which stated:

> A [*L*]*oudermill* hearing was held on Wednesday May 11, 2022[,] at [8:05a.m.], which consisted of[] Deputy Warden Adam Smith, Deputy Warden Blythe Toma. [sic] Robert Lee, [Human Resource] Generalist.  You were represented by [U]nion representative Charles Claypoole and [President] Englert.
>
> At this hearing, you were given the opportunity to respond to charges that your conduct is in violation of the below listed [] County [j]ail violations of policies and procedures.
>
> **AC.1 Policy #623 Computer Network, Internet Access and Electronic Email Security Policy**
>
> Prohibited email includes, but not limited to:
>
> d) Video links and other unprofessional/non[-]work-related correspondence
>
> **ACJ Code of Ethics**
>
> **4.6 MATURITY**: All jail employees will be expected to act in a mature professional manner.  Inmates should look

---

[1] A *Loudermill* hearing is a pre-termination due process hearing required to be provided to a public employee, as established in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985).

3

at the prison employee in a professional light and use them as a role model. Childish behavior such as horseplay and temper tantrums by staff cannot be tolerated.

**2.3 ALL EMPLOYEES SHALL CARRY OUT ALL ORDERS AND DIRECTIVES**

**a**. All employees will carry out all orders and directives issued or given them by a supervisor, in a prompt and efficient manner. DISREGARD OF ORDERS AND DIRECTIVES ISSUED BY A SUPERVISOR IN A WILFUL [SIC] OR DILATORY MANNER WILL BE CAUSE FOR SEVERE DISCIPLINARY ACTION UP TO AND INCLUDING DISCHARGE.

**b**. Insubordination in any fashion will not be tolerated. All employees will render due respect to all supervisor staff and will carry out all orders and instructions given. No staff members will engage in making derogatory remarks or discrediting statements or slanderous gossip, concerning supervisors, nor their orders or instructions. Disregard of such will be cause for severe disciplinary action up to and including termination.

Specifically, on [April 6, 2022,] during your tour of duty, at approximately [8:26 a.m.], you responded to an email in an unprofessional manner to #ACJ [Correctional] Officers.

Therefore, based upon documentation submitted, [Warden Orlando L. Harper] [] determined that you will be suspended from your position as correctional officer for five (5) days beginning June 12, 2022 through June 16, 2022, for the above-mentioned violations of the [] County policies and procedures. This suspension shall be held in abeyance until the completion of the grievance process.

R.R. at 45a (italics added).

On May 26, 2022, the Union filed a grievance with the County on Grievant's behalf. The Official Grievance Form alleged: "[Grievant] was given a 5[-]day suspension for responding to an email that was sent by the President of the Union. This [r]esponse was intended for fellow Union [Correctional] Officers and

4

was not, nor intended to be [d]isrespectful. Remedy, remove discipline." R.R. at 28a. The County issued a Step 1 denial on June 3, 2022. The Union appealed from the grievance denial to Step 2 on the same date. The grievance was heard at Step 2 on either August 16, 2022 and/or September 2, 2022, with the County indicating that the discipline would be reduced to a 3-day suspension. The Union appealed from the grievance denial to Step 3 on September 2, 2022. A Step 3 hearing was conducted on September 20, 2022, with the County denying the grievance by October 12, 2022 letter. On October 27, 2022, the Union appealed from the grievance denial to arbitration.

On September 22, 2023, the Arbitrator sustained the grievance. Significantly, the Arbitrator first concluded:

> From the record, **it is clear that the parties did not follow the agreed upon timeline in this matter**. On June 3, 2022, *the County's* Step 1 **response** was issued six working days after the Step 1 grievance was filed on May 26, 2022, which **was one day after the five working day requirement**. On the same date, the Union appealed the grievance to Step 2. *The County* **issued its Step 2 response outside the time requirements**, on either August 16, 2022 or September 2, 2022. Following the Union's appeal to Step 3, a hearing was held on September 20, 2022, with *the County* **again issuing its response outside of the contractual [10] working day requirements** on October 12, 2022. **The Union** also **did not follow the contractual [10] working day requirement**, **appealing the matter to arbitration on October 27, 2022**. While not specifically agreed to, all of these time extensions were implemented without objection from either party until the County raised the issue for the first time at arbitration. Under such circumstances, **it is apparent that the contractual time requirements had been waived by the parties**. The County could not implement the time requirements at arbitration. The grievance is therefore arbitrable and properly considered at arbitration.

5

Arbitrator Dec. at 8-9 (bold and italic emphasis added).

Thereafter, the Arbitrator issued her Award:

> The grievance is arbitrable and sustained. The County did not have just cause to issue the Grievant a 5[-]day suspension and was therefore in violation of the [CBA]. The County is directed to make the Grievant whole, with all lost wages, and benefits, and to expunge the discipline from the Grievant's records.

*Id*. at 10. The County appealed to the trial court. On July 5, 2024, the trial court granted the County's Petition to Vacate, vacated the Arbitrator's Award, and denied the grievance.

The Union appealed to this Court.[2] On January 9, 2024, the trial court directed the Union to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement). On January 12, 2024, the Union filed its Rule 1925(b) Statement. On February 13, 2024, the trial court filed its opinion pursuant to Rule 1925(a) (Rule 1925(a) Opinion). In its Rule 1925(a) Opinion, the trial court concluded that "the timeliness issue was within the bounds of the CBA, however, the Arbitrator's opinion and [A]ward was not rationally derived from the CBA and lacked jurisdiction because the grievance was untimely filed." Trial Ct. Op. at 12.

---

[2]    In reviewing an arbitration award, this Court applies the highly deferential two-prong "essence test." *Chambersburg Area Sch*[.] *Dist*[.] *v. Chambersburg Educ*[.] *Ass*[*'n] (Pro*[.]*)*, 120 A.3d 407, 412 (Pa. Cmwlth. 2015). First, we decide whether the issue is encompassed by the collective bargaining agreement. Second, if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement, it will be sustained.

*Slippery Rock Univ. of Pa. v. Ass'n of Pa. State Coll. & Univ. Fac. (Slippery Rock II)*, 241 A.3d 1278, 1284 (Pa. Cmwlth. 2020).

Specifically, the trial court explained:

> Although the Arbitrator found that the County failed to meet the time limit requirements for the appeal process, there is no evidence to support a finding that the Union raised the County's issuances of its untimely responses in Step One, Two, or Three. The CBA provides that when the County fails to meet the time limit requirement at Step One, Two, or Three, the Union's remedy is to skip the next level of the process. For example, if the County failed to respond timely on Step One, the Union could have requested to jump to Step Three and bypass Step Two. The record is clear that the Union failed to exercise its rights provided under the CBA to untimely responses by the County, but untimely County responses should not be interpreted as a waiver by the County. Importantly, **by concluding that the history of untimely filings indicated that the parties waived the contractual time requirement**, **the Arbitrator erroneously added an additional provision to the agreement**. [The trial court] found the untimely filings by each party to be separate issues. Moreover, there is no such evidence to support a finding that the Union requested to extend the appeal time limit, nor evidence that there was a mutual agreement by the parties. Consequently, [**the trial court**] **found that the Union's appeal to arbitration was untimely filed**, **and that the Arbitrator incorrectly permitted the Union to sidestep the contractual time limit set forth in the parties' CBA**. **Thus, the determination by the Arbitrator as to the waiver of the CBA time limits w[as] outside of her jurisdiction and did not draw its essence from the parties' agreement**.

Trial Ct. Op. at 11 (emphasis added).

The Union first argues that the trial court erred by holding that the Arbitrator lacked jurisdiction over the dispute because the parties had waived the CBA grievance procedure time limits, a finding which the trial court held was not rationally derived from the CBA. Specifically, the Union contends that the Arbitrator properly interpreted the CBA to hold that the grievance was timely, procedurally arbitrable, and within her jurisdiction to resolve because the County

7

had waived the timeliness objection to the grievance since both parties did not follow the grievance procedure timelines, and because the County failed to raise any objection until the arbitration hearing, which was held six and one half months later, despite communications between the parties during that period of time.

The County rejoins that the Arbitrator lacked jurisdiction because the Arbitrator acknowledged the Union's appeal was untimely and proceeded to investigate whether the explicit terms of the CBA could be negated. The County asserts that the Arbitrator may not interpret the terms of the CBA absent jurisdiction. The County retorts, in the alternative, that the parties are subject to the CBA's clear terms, providing both the means of processing grievances as well as the consequences when violations occur. The County further counters that, assuming there was a failure to provide a response within the time period allotted within the CBA, the CBA provides that the Union's remedy is to bypass that step and proceed to the next step. The County maintains that the Arbitrator's decision to create actionable waiver when the parties applied the CBA as written is inconsistent with the CBA's clear terms.

It is well established:

> [A] reviewing court owes great deference to an arbitration award. Under what is known as the 'essence test,' the award must be upheld if: (1) the issue as properly defined is within the terms of the collective bargaining agreement; and (2) the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. An arbitrator's award will be vacated only if it 'indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.' The test is not whether the reviewing court agrees with the arbitrator's interpretation of the collective bargaining agreement but whether the arbitrator's interpretation and application of the agreement can be reconciled with the language of the agreement.

8

*Dep't of Corr., State Corr. Inst. at Pittsburgh v. Pa. State Corr. Officers Ass'n* (*SCI-Pittsburgh*), 56 A.3d 60, 64 (Pa. Cmwlth. 2012) (quoting *Dep't of Corr. v. Pa. State Corr. Officers Ass'n*, 38 A.3d 975, 980 (Pa. Cmwlth. 2011) (citations omitted)).

> "[W]e must sustain the arbitrator's award if it is based on anything that can be gleaned as the 'essence' of the bargaining agreement, but **this does not include changing the language of the contract or adding new and additional provisions**." *Am. Fed'n of State, Cnty. & Mun. Emps., Dist. Council 84, AFL-CIO v. City of Beaver Falls*, . . . 459 A.2d 863, 865 ([Pa. Cmwlth.] 1983). "**Where the arbitrator**'s **words exhibit an infidelity to the agreement**, **courts have no choice but to refuse enforcement of the award**." *S. Tioga Educ. Ass'n v. S. Tioga Sch. Dist.*, 668 A.2d 260, 262 (Pa. Cmwlth. 1995) (quoting *Riverview Sch. Dist. v. Riverview Educ. Ass'n, PSEA-NEA*, . . . 639 A.2d 974, 977 ([Pa. Cmwlth.] 1994)).[3] **An arbitrator may not add time provisions that could have been**, **but were not**[,] **included in the CBA when it was drafted**.

*SCI-Pittsburgh*, 56 A.3d at 64 (emphasis added).

Here, the CBA provides, in pertinent part:

ARTICLE III

Grievance Procedure

D. Step 4 -Arbitration Level

**If the complaining employee**(s) **and Union are not satisfied with the Step 3 response to any grievance**, **it shall**, **within** [**10**] **calendar days following the Step 3 response** (or due date for any not provided) **appeal the grievance to arbitration** per the following:

---

[3] *Riverview School District* has been abrogated on other grounds. Specifically, the Pennsylvania Supreme Court rejected the "manifestly unreasonable" standard of review utilized in *Riverview School District* and, therefore, that decision is no longer binding on this Court. *See Sch. Dist. of Phila. v. Commonwealth Ass'n of Sch. Adm'rs, Teamsters Local 502*, 160 A.3d 928 (Pa. Cmwlth. 2017).

(1) Each appeal to arbitration shall be effected by written notice from the Union to the County, and shall be followed by a prompt and joint effort to select and appoint a mutually acceptable [a]rbitrator to hear and decide the grievance. (Franckiewicz Award, 2014-2019)

4. Miscellaneous:

A. **It is agreed that any grievance must be presented under the procedures of this Article promptly and within the prescribed time limits**. Any grievance not presented within the time limitation of each level shall be considered settled [on the] basis of the decision which was not appealed or shall be deemed settled on the basis of the decision in the last level to which the grievance was carried and shall not be further appealed or filed as a new grievance. **Time limits in the appeal steps may be extended by mutual <u>written</u> consent of the parties**. (McDaniel Award, 1997-2002). ([Underline e]mphasis in original[.])

R.R. at 4a (bold emphasis added).[4]

The Arbitrator quoted from the "[CBA] between [the] County . . . and [the] [Union], July 1, 1994 through June 30, 1997, **as amended by** numerous [**interest**] **arbitration awards**, **including the 1997-2002 McDaniel Award** and the 2014-2019 Franckiewicz Award . . . ." R.R. at 3a n.1 (emphasis added). Prior to the 1997-2002 McDaniel Award, the CBA stated: "Time limits in the appeal steps may be extended by mutual consent of the parties." R.R. at 17a. The 1997-2002 McDaniel Award directed that "<u>written</u>" be added to the CBA. R.R. at 4a.

"In interest arbitration, an arbitration panel determines the terms and conditions of employment after the parties fail to reach an agreement through collective bargaining negotiations. Interest arbitration is, in essence, the process by which the parties, through a neutral arbitrator or panel, create a collective bargaining

---

[4] The above portions of the CBA are cited from the Arbitrator's decision because the portions cited thereafter in the Reproduced Record, *see* R.R. at 16a-17a, are from the CBA dated "July 1, 1994 through June 30, 1997[.]" R.R. at 13a.

10

agreement." *Michael G. Lutz Lodge No. 5, Fraternal Ord. of Police v. City of Phila.*, 129 A.3d 1221, 1226 (Pa. 2015). Here, the specification that time limits in the appeal steps may be extended by mutual **written** consent of the parties – was added to the CBA as a result of interest arbitration, specifically, the 1997-2002 McDaniel Award.

Notwithstanding, the Arbitrator concluded:

> From the record, **it is clear that the parties did not follow the agreed upon timeline in this matter**. . . . The Union [] did not follow the contractual [10] working day requirement, appealing the matter to arbitration on October 27, 2022. **While not specifically agreed to**, **all of the**[] **time extensions were implemented without objection from either party until the County raised the issue for the first time at arbitration**. **Under such circumstances**, **it is apparent that the contractual time requirements had been waived by the parties**. The County could not implement the time requirements at arbitration. The grievance is therefore arbitrable and properly considered at arbitration.

Arbitrator Dec. at 8-9 (emphasis added).

Black's Law Dictionary defines waiver as "the voluntary relinquishment or abandonment - express or implied - of a legal right or advantage[.]" Black's Law Dictionary 1894 (11th ed. 2019). Herein, the Union had a right to challenge the County's late appeals to the different grievance steps due to the County's untimely filings, *see* R.R. at 4a, but the Union chose not to challenge the County's late appeals. Similarly, the County also had a right to challenge the Union's late appeal due to the Union's untimely appeal and the County in fact chose to challenge the Union's late filing. The County did not lose its right nor did it waive any such right simply because the Union chose to waive its right to challenge the County's late filings. The CBA contains no such language, and no inference can be made that because the Union waived its rights, the County did as well. In concluding to the contrary, the Arbitrator added language to the CBA which she was prohibited

11

from doing. The Dissent maintains that the Arbitrator can sidestep the CBA based on principles of fairness. However, to conclude that the County waived its right to challenge the Union's untimely appeal because the Union chose not to challenge the County's untimely filings and to rewrite the parties' CBA is the epitome of unfairness.

"The purpose of including a grievance procedure in collective bargaining agreements is to have an orderly and timely process to resolve disputes arising under the collective bargaining agreement." *State Sys. of Higher Educ. v. United Plant Guard Workers of Am., Local Union No. 509*, 612 A.2d 645, 647 (Pa. Cmwlth. 1992).

> This Court has specifically held that where . . .
>
> > [t]he [collective bargaining] agreement explicitly provided for a [15-]day limit, and the arbitrator's decision to allow the late filing essentially ignored the language limiting the filing of grievances to [15] days from the date of the occurrence giving rise to the grievance[,] . . . the decision of the arbitrator did not draw its essence from that [collective bargaining] agreement.
>
> [*State Sys. of Higher Educ.*, 612 A.2d at 647].
>
> The [a]rbitrator's conclusion that the grievances were timely [was] without foundation in, fails to logically flow from, and cannot be reconciled with the clear language of the [collective bargaining agreement]. Because the [a]rbitrator's [a]ward does not draw its essence from the [collective bargaining agreement], it is reversed.

*SCI-Pittsburgh*, 56 A.3d at 64; *see also Cnty. of Berks v. Int'l Brotherhood of Teamsters Loc. Union No. 429* (Pa. Cmwlth. No. 1230 C.D. 2007, filed May 5, 2008).[5]

In *County of Berks*, although the parties added a provision to the collective bargaining agreement through interest arbitration,

> the [a]rbitator nevertheless ignored the determination of the [interest] [a]rbitration [p]anel and inserted his own judgment to, in effect, change the rights of the parties.
>
> For these reasons, [this Court] agree[d] with [the a]ppellants that by substituting his judgment and definition of "just cause" for that established by the express language of the [collective bargaining agreements], the [a]rbitrator failed to draw the [g]rievance [a]rbitration [a]ward from the essence of the contract.
>
> Accordingly, this Court] [] reverse[d] the trial court and vacate[d] the [g]rievance [a]rbitration [a]ward.

*Cnty. of Berks*, slip op. at 11 (footnote omitted).

Similarly, here, the CBA explicitly provided that time limits in the appeal steps may be extended by *mutual written consent of the parties*, notwithstanding there was no written consent of the parties to extend the appeal time limits, the Arbitrator "inserted [her] own judgement to, in effect, change the rights of the parties[]" by inserting waiver and essentially ignored the determination of the interest arbitration panel. *Cnty. of Berks*, slip op. at 11. Thus, the Arbitrator's decision did not draw its essence from the CBA. Rather, the Arbitrator's conclusion that the time limit to appeal to arbitration was waived lacked foundation in, failed to logically flow from, and cannot be reconciled with the clear language of the CBA.

---

[5] Unreported decisions of this Court issued after January 15, 2008, may be cited for their persuasive value but not as binding precedent. *See* Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

13

Because the Arbitrator's Award did not draw its essence from the CBA, it must be reversed.[6]  Accordingly, the trial court properly granted the Petition to Vacate, vacated the Award, and denied the grievance.[7]

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[6] The Dissent contends that the issue in this case is not whether this Court agrees with the Arbitrator's conclusion that the County's failure to abide by the CBA's timeline requirements amounted to waiver, but rather whether the Arbitrator's interpretation may be rationally derived from the CBA.  Here, as a result of interest arbitration, the CBA required "<u>written</u>" consent of the parties to extend the appeal time limits.  R.R. at 4a (emphasis in original).  Prior to the 1997-2002 McDaniel Award, the CBA stated: "Time limits in the appeal steps may be extended by mutual consent of the parties."  R.R. at 17a.  The 1997-2002 McDaniel Award directed that "<u>written</u>" be added to the CBA.  R.R. at 4a.  While the Dissent proffers that the use of the word *may* implies *permissive power*, here, *may* refers to extending the mandatory timelines where there is written agreement of the parties, not the manner of the extension.  To hold otherwise would eviscerate the interest arbitration award.  Therefore, **the Arbitrator had to go outside the CBA to conclude that the parties waived the appeal time limits**.  Because the Arbitrator's conclusion that the parties waived the time limits is "without foundation in, fails to logically flow from, and cannot be reconciled with the clear language of the CBA, . . . the Arbitrator's Award does not draw its essence from the CBA."  *SCI-Pittsburgh*, 56 A.3d at 64.

[7] Based on this Court's disposition of the first issue, this Court does not reach the second issue.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Allegheny, Pennsylvania   :
                                   :
             v.                   :
                                   :
Allegheny County Prison Employees  :
Independent Union,                 :   No. 38 C.D. 2024
               Appellant     :

## O R D E R

AND NOW, this 5th day of December, 2024, the Allegheny County Common Pleas Court's January 5, 2024 order is affirmed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Allegheny, Pennsylvania    :
    :
    v.    : No. 38 C.D. 2024
    : Argued: October 8, 2024
Allegheny County Prison Employees    :
Independent Union,    :
    Appellant  :


BEFORE:   HONORABLE ANNE E. COVEY, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE STACY WALLACE, Judge


<u>OPINION NOT REPORTED</u>

DISSENTING OPINION
BY JUDGE WALLACE                 FILED: December 5, 2024


Respectfully, I dissent. Because I would conclude Arbitrator Desimone's (Arbitrator) September 22, 2023 arbitration award (Award) granting Allegheny County Prison Employees Independent Union's (Union) grievance drew its essence from the Collective Bargaining Agreement (CBA) between the Union and Allegheny County (County), I would reverse the Allegheny County Common Pleas Court's (trial court) January 5, 2024 order (Order).

After receiving an email from his Union president, Robert Pindel (Grievant), a correctional officer at the County's jail, sent a reply email to all jail staff. The County, deeming his email violated its policies, suspended Grievant from his employment. The Union subsequently filed the grievance at issue on Grievant's behalf.

The relevant portion of the parties' CBA outlines the following timeline for grievance procedures:

Step 1 — Grievances shall be presented to the Deputy Warden, in writing, **within five work days following the event or action complained of, or following the date such employee(s) had knowledge of or should have learned of its occurrence**. **Within five work days following receipt of any timely submission of a written grievance, the Deputy Warden shall hear and provide the complaining employee(s) and Union a written response thereto**, in each case. At this and subsequent Step levels, the written grievance shall be submitted on an approved form, and shall describe the event or action complained of; indicate the date of that event or action; list any witnesses thereto; cite the Agreement provisions believed to be violated; and set forth the remedy sought for its resolution.

Step 2 — If the complaining employee(s) and Union are not satisfied with the Step I response by the Deputy Warden, it shall, **within fifteen work days following that Step 1 response (or due date of any not provided)** be submitted in writing to the Warden for resolution. **Within ten work days following receipt of any timely such submission of any written grievance, the Warden shall hear and provide the complaining employee(s) and Union a response** thereto, in each case.

Step 3 — If the complaining employee(s) and Union are not satisfied with the Step 2 response by the Warden, it shall, **within fifteen work days following that Step 2 response (or due date of any not provided) be submitted in writing** to the County Manager or his designee for resolution. Within **ten work days following the receipt of any timely submission of a written grievance, the County manager or his designee shall hear and provide the final management response to the grievance**.

Step 4 — If the complaining employee(s) and Union are not satisfied with the Step 3 response to any grievance, it shall, **within ten calendar days following the Step 3 response (or due date of any not provided) appeal the grievance to arbitration** per the following:

    a. Each appeal for arbitration shall be effected by written notice from the Union to the County, and shall be followed by a

prompt and joint effort to select and appoint a mutually acceptable Arbitrator to hear and decide the grievance.

b. Should the parties fail to mutually agree upon an arbitrator, the Union shall request the Pennsylvania Bureau of Mediation to provide it and the County with a list of nine arbitrators from which one will be selected by means of alternate striking. The Union shall strike the first name and the final remaining name shall be the arbitrator selected to hear and decide the grievance.

c. In the absence of a written agreement, there shall be no appeals of multiple un-related grievances in the same demand for arbitration.  A separate appeal shall be made for each such grievance, with the arbitrator for each selected on the same basis.

d. The arbitrator selected and appointed to schedule, hear and decide any grievance shall be requested to do so as expeditiously as possible. The decision of the arbitrator shall be final and binding, in accordance with the terms of the Public Employe Relations Act (PERA).[1]

Reproduced Record (R.R.) at 22a-23a.  In relevant part, the CBA also provides the following:

It is agreed that any grievance must be presented under the procedures of this Article promptly and within the prescribed time limits.  Any grievance not presented within the time limitations of each level shall be considered settled on the basis of the decision which was not appealed or shall be deemed settled on the basis of the decision in the last level to which the grievance was carried and shall not be further appealed or filed as a new grievance.  Time limits in the appeal steps may be extended by mutual written consent of the parties.

*Id.*

The actual timeline of the parties' grievance procedure was as follows.  On May 26, 2022, the Union filed the grievance with the County.  On June 3, 2022, the

---

[1]  Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101-1101.2301.

County issued a Step 1 denial. The County's response was one day beyond the CBA's time provisions. On the same date, the Union appealed to Step 2. On August 16, 2022, and/or September 2, 2022, the County heard the grievance and reduced the time for the suspension. The County's hearing and response was untimely under the CBA's grievance procedure. On September 2, 2022, the Union timely appealed to Step 3. The County held a hearing on September 20, 2022, which was untimely under the CBA. The County denied the grievance on October 12, 2022, which was also untimely under the CBA. On October 27, 2022, the Union appealed the grievance to arbitration.

Finding the grievance arbitrable, the Arbitrator sustained the grievance. In relevant part, the Arbitrator concluded:

> [I]t is clear the parties did not follow the agreed upon timeline in this matter. On June 3, 2022[,] the County's Step 1 response was issued . . . one day after the five working day requirement. . . . The County issued its Step 2 response outside the time requirements . . . . Following the Union's appeal to Step 3, . . . the County again issu[ed] its response outside of the contractual [10] working day requirements on October 12, 2022. The Union also did not follow the contractual [10] working day requirement, appealing the matter to arbitration on October 27, 2022. While not specifically agreed to, all of these time extensions were implemented without objection from either party until the County raised the issue for the first time at arbitration. Under such circumstances, it is apparent that the contractual time requirements had been waived by the parties. The County could not implement the time requirements at arbitration. The grievance is therefore arbitrable.

Arbitrator Dec. at 8-9. The County appealed to the trial court. The trial court concluded "the timeliness issue was within the bounds of the CBA, however, the Arbitrator's opinion and [A]ward was not rationally derived from the CBA and lacked jurisdiction because the grievance was untimely filed." Trial Ct. Op. at 12.

SW - 4

It is well settled that our role in reviewing an arbitrator's interpretation of the terms of a collective bargaining agreement is one of deference. *State Sys. of Higher Educ. (Cheyney Univ.) v. State Coll. Univ. Pro. Ass'n (PSEA-NEA)*, 743 A.2d 405, 413 (Pa. 1999). We apply the "essence test" to first determine if the issue, as properly defined, is encompassed within the terms of the collective bargaining agreement. *Danville Area Sch. Dist. v. Danville Area Educ. Ass'n, PSEA/NEA*, 754 A.2d 1255, 1258–59 (Pa. 2000) (citation omitted). In *Cheyney University*, the Pennsylvania Supreme Court explained:

> Pursuant to the essence test as stated today, a reviewing court will conduct a two-prong analysis. First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.

743 A.2d at 413. It is not for this Court to apply its own interpretation of a collective bargaining agreement because a reviewing court's differing interpretation is "insufficient justification for vacating an award." *Id.* at 411.

Moreover, in these cases, we do not inquire into whether an arbitrator's decision is reasonable or even manifestly unreasonable. *Id.* Instead, the question we address is whether the award may in any way be rationally derived from the agreement between the parties. *Id.* In interpreting the collective bargaining agreement, it is the arbitrator who must determine the factual question of the parties' intent. *Williamsport Area Sch. Dist. v. Williamsport Educ. Ass'n*, 686 A.2d 885 (Pa. Cmwlth. 1996). In *Danville*, the Supreme Court explained:

As to this question, when discerning the intent of the parties, the arbitrator is not confined to the express terms of the collective bargaining agreement. Our court has stated that an arbitrator's award may draw its essence from the collective bargaining agreement if the arbitrator's "interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." [*Cheyney Univ.*], 743 A.2d at 411, *citing, Community College of Beaver County,* 375 A.2d at 1275 (citations omitted).

754 A.2d at 1260 (emphasis added). Therefore, when an issue is within the terms of the collective bargaining agreement and "one can say that the decision draws its 'essence' from the agreement . . . reversal is not warranted even if a court believes that the decision, though rational, is incorrect." *Cheyney Univ.*, 743 A.2d at 412.

Here, in affirming the trial court's decision, the Majority relies on the language in the CBA that states: "Time limits in the appeal steps may be extended by mutual written consent of the parties." R.R. at 23a. Ultimately, the Majority concludes:

> [T]he CBA explicitly provided that time limits in the appeal steps may be extended by *mutual written consent of the parties*, notwithstanding there was no written consent of the parties to extend the appeal time limits, the Arbitrator "inserted [her] own judgement to, in effect, change the rights of the parties[]" by inserting waiver and essentially ignored the determination of the interest arbitration panel. *Cnty. of Berks*, slip op. at 11. Thus, the Arbitrator's decision did not draw its essence from the CBA. Rather, the Arbitrator's conclusion that the time limit to appeal to arbitration was waived lacked foundation in, failed to logically flow from, and cannot be reconciled with the clear language of the CBA. Because the Arbitrator's Award did not draw its essence from the CBA, it must be reversed.

*Cnty. of Allegheny v. Allegheny Cnty. Prison Emps. Indep. Union* (Pa. Cmwlth., No. 38 C.D. 2024, filed Dec. 5, 2024) slip op. at 13-14. I disagree.

SW - 6

While the Majority reads this language to exclude any extension of time limits in the appeal steps *except* by mutual written consent of the parties, I read this section to permit the parties to extend the time limits in the appeal steps by mutual written consent. Generally, as a matter of textual analysis, the word "may" implies permissive power, while a word such as "shall" indicates a mandatory limitation. *See A. Scott Enter., Inc. v. City of Allentown*, 142 A.3d 779, 787 (Pa. 2016). Here, the CBA does not provide written consent of the parties is the **only** means of extending the time limits. The CBA simply permits the parties to extend the time limits by mutual written consent. I cannot agree with the Majority that the Award is not rationally derived from the CBA merely because the Arbitrator did not apply the Majority's interpretation of the contractual language. The Arbitrator clearly considered the terms of the CBA, but ultimately determined the parties waived the timeline requirements. The language of the CBA permits the parties to agree to an extension of time by written consent, but the CBA does not indicate that is the *only* means for an extension of time. Therefore, the Arbitrator's application of basic contract principles, specifically implied waiver, results in an Award that is rationally derived from the CBA. Because it was the Arbitrator's role to interpret this provision, and it was not for the trial court or this Court to second-guess the Arbitrator's interpretation, I would conclude the Award draws its essence from the CBA.

Furthermore, even if the Arbitrator interpreted the CBA's language to mean the **only** way to extend the time limit requirements under the CBA was via written consent of the parties, I would still conclude the Arbitrator's Award drew its essence from the CBA. An arbitrator's interpretation of a CBA is guided by general contract construction principles. *Am. Fed'n of State, Cnty., & Mun. Emps., Dist. Council 87*

*v. Cnty. of Lackawanna*, 102 A.3d 1285, 1291 (Pa. Cmwlth. 2014) (citation omitted). As a general contract principle, parties to a contract can expressly or impliedly waive its provisions. *Ernest Bock & Sons, Inc. v. City of Philadelphia*, 239 A.3d 1144 (Pa. Cmwlth. 2020) (citation omitted). "Waiver may be established by . . . a party's undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary – i.e., an implied waiver." *Id.* (internal quotations and citations omitted). "An implied waiver exists when there is either an unexpressed intention to waive, which may be clearly inferred from the circumstances, or no such intention in fact to waive, but conduct which misleads one of the parties into a reasonable belief that a provision of the contract has been waived." *Id.* (internal quotation and citation omitted). "Claims of implied waiver must be evaluated in light of principles of logic and fairness. That evaluation demands a fastidious sifting of the facts and a careful weighing of the circumstances." *Nationwide Mut. Ins. Co. v. Fleming*, 992 A.2d 65, 70 (Pa. 2010). Furthermore, unless expressly precluded from resolving procedural issues in the CBA, questions of procedure, like substantive issues, are within an arbitrator's purview. *Cnty. of Allegheny v. Allegheny Ct. Ass'n of Pro. Emps.*, 138 A.3d 701, 708 (Pa. Cmwlth. 2016).

While not binding on this Court, in *GK MGT Inc. v. Local 274, Hotel Employees and Restaurant Employees Union, AFL-CIO*, 930 F.2d 301 (3d Cir. 1991), relied upon by the Union, the Third Circuit addressed an issue similar to the one raised here. In *GK MGT*, an employer discharged an employee, and the union requested to proceed to arbitration nearly two months beyond the 15-day time limit provided for in the parties' collective bargaining agreement. The arbitrator concluded the matter was arbitrable. The employer appealed to the district court,

which concluded the arbitrator's timeliness ruling did not draw its essence from the agreement, and therefore granted the employer's motion for summary judgment. The union appealed and the Third Circuit Court explained:

> In determining whether an award draws its essence from an agreement, courts recognize that in interpreting a collective bargaining agreement an arbitrator is not confined to the terms themselves. Rather, in discharging his function under an agreement an arbitrator is entitled to take cognizance of contract principles. *See NF & M Corp. v. United Steelworkers,* 524 F.2d 756, 759 (3d Cir.1975) (award can be set aside only "where there is manifest disregard of agreement, totally unsupported by principles of contract construction") (quoting *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir.1969)).

> The arbitrator's right to invoke contract principles includes the right to invoke principles of waiver and estoppel. *See Public Service Co. v. International Bhd. of Elec. Workers, Local Union No. III,* 902 F.2d 19, 20 (10th Cir.1990) (upheld award where arbitrator ruled employer estopped to deny that it agreed not to contract out); *Shopmen's Local 539 of Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, AFL–CIO v. Mosher Steel Co.,* 796 F.2d 1361, 1365 (11th Cir.1986) (upheld award where arbitrator determined employer's failure to object to delay prior to arbitration waived its right to object to timeliness of demand); *Ottley v. Sheepshead Nursing Home,* 688 F.2d 883, 890–91 (2d Cir.1982) (court refused to set aside award on ground dispute was submitted out of time where arbitrator could have determined employer waived timeliness objection by failing to assert it before award was entered); *Holly Sugar Corp. v. Distillery, Rectifying, Wine & Allied Workers Int'l Union, AFL–CIO,* 412 F.2d 899, 903–04 (9th Cir.1969) (upheld arbitrator's determination that issue submitted out of time was arbitrable because employer's failure to notify employee of nature of work tolled running of time period); *cf.* F. Elkouri & E.A. Elkouri, *How Arbitration Works* 399 (4th ed. 1985 & Supp.1991) (arbitrators frequently apply principles of estoppel and waiver).

> It is not our province to decide whether the arbitrator was correct in his application of waiver or estoppel principles. *See Misco,* 484 U.S. at 38, 108 S.Ct. at 371 ("that a court is convinced [arbitrator] committed serious error does not suffice to overturn his decision."); *Tanoma Mining Co. v. Local Union No. 1269, United Mine Workers,* 896 F.2d 745, 749 (3d Cir.1990) (district court impermissibly substituted its

application of agency principles for that of arbitrator's); *Shopmen's Local,* 796 F.2d at 1365 ("Whether or not the Court would agree with the arbitrator that these facts amounted to a waiver, it is not the function of the Court to second guess the arbitrator on matters that are within his power to decide."). Thus, we conclude that the arbitrator's timeliness ruling drew its essence from the agreement.

*GK MGT*, 930 F.2d at 304-05.

In this case, the County violated the grievance timeline provisions of the CBA first by addressing the Union's Step 1 denial one day beyond the CBA's timeline requirement. The County again violated the grievance timeline provisions of the CBA by addressing the Union's appeal from Step 1 to Step 2 beyond the deadline required by the CBA. The County then failed to hold a hearing on the Union's appeal to Step 3 within the CBA's timeline provisions. The County then failed to issue its decision on Step 3 within the CBA's timeline provisions. Despite this, the County then used the CBA's procedural requirements to deprive Grievant of the opportunity to proceed to grievance arbitration after the Union appealed its grievance to arbitration beyond the CBA's timeline provision deadline. Based on these facts, the Arbitrator concluded the parties waived the CBA's timeline requirements.

The issue in this case is not whether we agree with the Arbitrator's conclusion that the County's failure to abide by the CBA's timeline requirements amounted to waiver, but rather whether the Arbitrator's interpretation may be rationally derived from the CBA. Here, the Arbitrator addressed an issue covered by the CBA and considered the terms of the CBA, specifically the terms outlining the timeliness provisions. Applying the facts of the case to the terms of the CBA, the Arbitrator concluded the parties waived the CBA's timeline requirements based on their conduct, specifically the failure of the County to conform to the timeline requirements throughout the grievance process. In discerning the intent of the

parties, the Arbitrator was free to apply basic contract principles and was not confined to the express terms of the CBA. *See Danville*, 754 A.2d at 1260. The Arbitrator concluded the County's conduct in failing to follow the CBA's timelines evidenced its intent to waive the timeline requirements. Therefore, I would conclude the Arbitrator's Award finding waiver drew its essence from the parties' CBA.

I cannot agree with the Majority's conclusion that despite the County failing to abide by the timeline requirements set forth in the CBA, the Arbitrator could not conclude it waived the CBA's timeline requirements. This outcome, in effect, gives the County freedom to ignore provisions of the CBA when it suits the County, address grievances, and issue decisions without any regard to the parties' agreed-upon timeline in the CBA, yet then be permitted to cry foul when the Union does the same. This outcome defies fundamental principles of fairness. Accordingly, I would conclude the Arbitrator had jurisdiction over this dispute and was free to interpret the terms of the CBA, including its timeline provisions, and the Arbitrator could rely on basic contract principles to determine the parties waived the CBA's grievance procedure time limits. In applying the essence test, I would reverse the trial court's order and uphold the Arbitrator's determination.

_____
STACY WALLACE, Judge

SW - 11